The STATE of Ohio, Appellee,

v.

GARRARD, Appellant.

[Cite as *State v. Garrard,* 170 Ohio App.3d 487, 2007-Ohio-1244.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 06AP–653 and 06AP–685.

Decided March 20, 2007.

488

Ron O'Brien, Franklin County Prosecuting Attorney, Richard Termuhlen II, and Seth Gilbert, Assistant Prosecuting Attorneys, for appellee.

Dennis Pusateri and Carol A. Wright, for appellant.

FRENCH, Judge.

{¶ 1} Defendant-appellant, Jason L. Garrard, appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court convicted appellant of failure to comply with an order or signal of a police officer, a third-degree felony, pursuant to a bench trial.

{¶ 2} On October 3, 2005, appellant was indicted on one count of (1) rape, a first-degree felony, in violation of R.C. 2907.02; (2) felonious assault, a second-degree felony, in violation of R.C. 2903.11; and (3) failure to comply with an order or signal of a police officer ("fleeing"), in violation of R.C. 2921.331. Ordinarily, under R.C. 2921.331, fleeing is a first-degree misdemeanor; however, plaintiff-

appellee, the state of Ohio, indicted the fleeing as a third-degree felony, pursuant to R.C. 2921.331(C)(5)(a)(ii), alleging that, in fleeing, appellant "caused a substantial risk of serious physical harm to persons or property."

{¶ 3} Appellant pleaded not guilty to the above charges. He invoked his right to a jury trial on the rape and felonious-assault charges, but waived his right to a jury trial on the fleeing charge. Thus, the parties tried the fleeing charge before the trial court. Ultimately, the jury found appellant not guilty of rape and felonious assault, and such charges are not the subject of this appeal.

{¶ 4} As for the fleeing charge, Columbus Police Detective James Shockey testified to the following on behalf of appellee. On September 12, 2005, Detective Shockey interviewed appellant about the above-noted rape and related offenses, and the officer informed appellant that charges might be filed against him.

{¶ 5} Thereafter, on September 23, 2005, Detective Shockey sought to execute an arrest warrant on appellant and his codefendant, Christina Robinson. That day, Detective Shockey worked with Detectives William Brubaker and Timothy Elkins. The detectives were using an unmarked vehicle.

{¶ 6} Initially, Detective Shockey arrested Robinson at an apartment on Brookway. While making the arrest, Detective Shockey saw the following:

[A] vehicle that was traveling from Livingston Avenue down towards the apartment. About midway * * * it had stopped, and unknown people from the neighborhood had stopped and were talking to the driver and were pointing down towards our direction.

After that brief conversation, the car continued this way. As it continued towards Brookway, [Robinson] told us that was [appellant] coming.
* * *

As the car continued, rather than stopping here in the parking lot, it continued around this bend. As it continued, Detective Elkins got into our plain car and began to exit the parking lot and went in the direction of where the car was.

{¶ 7} Although Detective Shockey remained at the scene of Robinson's arrest, the detective did notice that a black male was driving the car that Detective Elkins followed. Later, Detective Elkins returned to the scene of Robinson's arrest, and he indicated that when he reached the car he was following, no one was in the car. Thus, the detectives decided to search for appellant at his mother's apartment. A police cruiser arrived to transport Robinson to police headquarters, and the detectives drove to appellant's mother's apartment.

{¶ 8} Upon reaching appellant's mother's apartment, Detective Shockey saw that the car they had seen driving on Brookway had passed them. The detectives, with Detective Shockey driving, followed the car. Because they were

in an unmarked car, the detectives sought assistance by stating over the police radio that they had a wanted felon in front of them.

{¶ 9} Two police cruisers began following appellant. The cruisers' red and blue beacons were activated, and one cruiser got behind appellant's vehicle. Appellant did not stop at first, but after driving through several streets, appellant eventually stopped, and police officers apprehended him. After the apprehension, some of appellant's family members "were coming out of a northwestern corner house. * * * It was just 25, 30 feet from there."

{¶ 10} Columbus Police Officer Michael Bruce testified to the following on appellee's behalf. On September 23, 2005, Officer Bruce was on patrol with Officer Samuel Hazlerig. Officer Bruce was driving the cruiser, and the officer responded to the detectives' request for assistance in pursuing appellant. When Officer Bruce was on Mt. Vernon Avenue, he discovered appellant driving in his car. Officer Bruce eventually activated the cruiser's emergency lights and sirens to pursue appellant. At that point, appellant went down to Garfield Avenue, continued on Garfield to Buckingham, made a westbound turn on Buckingham, crossed over Buckingham, and then pulled to the north side of Buckingham. The officers then "actually made contact with [appellant] and took him into custody." Appellant was the only person in the car.

{¶ 11} Officer Bruce also testified that it was about 8:00 p.m. when the pursuit occurred. Officer Bruce further noted that the pursuit took place in an area mixed with residences and businesses. Officer Bruce specifically noted that Buckingham was a residential street. Additionally, Officer Bruce testified that 150 seconds had lapsed between his receiving the detectives' request for assistance and appellant's apprehension.

{¶ 12} On cross-examination, appellant's trial counsel asked Officer Bruce whether appellant actually knew that Officer Bruce had had his lights on. Officer Bruce stated that he could not testify as to what appellant knew. Officer Bruce also testified on cross-examination that during the initial part of his pursuing appellant, he knew that they were attempting to catch the vehicle, and he had to use a substantial amount of acceleration to catch it while he had the lights and sirens going. Officer Bruce further stated that appellant had made a rapid deceleration on Buckingham and that once they were close enough to the vehicle, appellant "curbed it, which is not what a normal person would do when they arrive at their destination." Officer Bruce then testified on cross-examination that he did not recall whether appellant had a safe place to pull over prior to the location on Buckingham where appellant did stop.

{¶ 13} Next, Detective Elkins testified to the following on appellee's behalf. On September 23, 2005, Detective Elkins accompanied Detective Shockey during the attempts to serve warrants on appellant and Robinson. The detectives found

Robinson sitting in a vehicle in a parking lot, and she stated that appellant would be right back. Later, Robinson stated: "[T]here he is right now." At that time, a car came northbound on Brookway and stopped. Appellant was driving the car and looked at the detectives when he stopped. A woman walked over to the car and started speaking to appellant, and appellant drove away on Brookway.

{¶ 14} Detective Elkins attempted to follow appellant, but could not find him. Detective Elkins started looking in the parking lots around the area, and he found appellant's car near Rand Avenue. "About the same time [Detective Elkins] * * * saw a male black. [Detective Elkins] [did not] know if it was [appellant] * * *, but [Detective Elkins] saw a male black running southbound from that area." Detective Elkins tried to catch up to the man, but was unable to do so.

{¶ 15} Detective Elkins then returned to the other detectives, and they drove to appellant's grandmother's house to see whether they could find him. Upon arriving at appellant's grandmother's house, the detectives saw appellant drive right past them. Next:

> [The detectives] called for patrol officers to assist. [Appellant] left at a high rate of speed, going down * * * Mt. Vernon. [Appellant was] just flying down Mt. Vernon. And the patrol officers happened to be in the area, and they got behind him and * * * they used their lights and sirens trying to get him to stop.
>
> [Appellant] continued fleeing up some side streets over towards where the little side streets dead end.

{¶ 16} Detective Elkins indicated at trial that the first time police were behind appellant with lights and sirens was on Mt. Vernon Avenue, and the street where appellant stopped may have been Buckingham. Detective Elkins also testified that eventually, they had cruisers "all over the place" pursuing appellant. Detective Elkins then testified that appellant ultimately stopped his car, and police apprehended him. Detective Elkins reiterated that during the pursuit, appellant was driving fast and that he did not "know what the rate of speed was." He said, "I'm sure those streets are 25. It was probably double that. That's just a guess."

{¶ 17} On cross-examination, Detective Elkins confirmed that the detectives' vehicle did not have lights and sirens. Detective Elkins also testified that due to his line of vision, he could not tell how far behind appellant the police cruisers were during the pursuit.

{¶ 18} Next, Gregory Young testified to the following on appellee's behalf. Young and appellant had been previously incarcerated at the same time in the Franklin County jail. Young is serving a 240–month sentence on a federal

cocaine conviction. Appellant told Young about his fleeing from law enforcement. Specifically, appellant told Young that "[h]e didn't have any choice. He had a couple rocks of cocaine. A person in his car had * * * crack and a pistol. And he had some alcohol in his car."

{¶ 19} Martin Kiggans testified to the following on appellee's behalf. Kiggans and appellant had also previously been incarcerated at the same time in the Franklin County jail. Appellant told Kiggans "about the incident when he fled in * * * a car." Kiggans has a prior theft conviction, and he is currently incarcerated on felony convictions pertaining to writing false prescriptions. However, Kiggans hopes to serve the rest of his sentence by participating in a drug-treatment program. On cross-examination, Kiggans confirmed that he was asking appellee to help get him out of prison so that he could start the drug-treatment program.

{¶ 20} Subsequently, appellee rested its case, and appellant's trial counsel asked the trial court to dismiss the fleeing charge pursuant to Crim.R. 29. The trial court denied the motion and stated: "I'm still hovering with that."

{¶ 21} Officer Hazlerig testified to the following on appellee's behalf. On September 23, 2005, Officer Hazlerig was working with Officer Bruce; Officer Hazlerig was a passenger in Officer Bruce's cruiser. That day, the officers responded to the detectives' request for assistance in pursuing appellant. The officers saw appellant on Mt. Vernon Avenue, and the car turned northbound onto Garfield Avenue. The officers drove to Garfield Avenue, initiated their lights and sirens, and followed the car. Appellant proceeded northbound on Garfield to Buckingham. Once appellant got to Buckingham, he turned left and did not pull over. They continued westbound, and crossed St. Clair. Eventually, after crossing St. Clair, appellant pulled over and was apprehended.

{¶ 22} Appellant rested his case. After the jury found appellant not guilty of rape and felonious assault, the trial court stated that it had not made a decision on the fleeing charge. The trial court stated: "I need to review that and I'll tell you on Tuesday," May 30, 2006.

{¶ 23} On Tuesday, May 30, 2006, the trial court stated:

At this time the court, having listened to all of the evidence throughout the course of the trial, finds [appellant] guilty of failure to comply with an order or signal of a police officer, which is a felony three.

Before rendering its verdict on the fleeing charge, the trial court had not entertained closing argument from appellant's trial counsel, and appellant's trial counsel did not object to the trial court's failure to provide an opportunity for

closing argument on the fleeing charge. The trial court then sentenced appellant to three years' imprisonment.

{¶ 24} Appellant appeals, raising three assignments of error:

**First Assignment of Error**

The trial court erred by failing to accord defendant-appellant his constitutional right to make closing argument by summarily rendering its verdict.

**Second Assignment of Error**

The trial court erred in entering judgment against the defendant because there was insufficient evidence to support the conviction.

**Third Assignment of Error**

The trial court erred by entering judgment against defendant-appellant because such judgment is contrary to the weight of the evidence.

{¶ 25} We begin with appellant's second assignment of error. In his second assignment of error, appellant contends that his fleeing conviction is based on insufficient evidence. We disagree.

{¶ 26} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state had proved beyond a reasonable doubt the essential elements of the crime. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, at ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See *Jenks*, paragraph two of the syllabus; *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency-of-the-evidence claim); *State v. Lockhart* (Aug. 7, 2001), Franklin App. No. 00AP–1138, 2001 WL 881277.

{¶ 27} As noted above, appellee was charged with fleeing, pursuant to R.C. 2921.331, which states:

(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

{¶ 28} In challenging his fleeing conviction, appellant first contends that the evidence failed to establish that he actually received a visible or audible signal to stop. A trier of fact may infer from the evidence whether a defendant was aware of a police officer's signal to stop. *State v. Hill,* Hamilton App. No. C–030678, 2004-Ohio-2275, 2004 WL 986426, at ¶ 12–13. Here, Officer Bruce testified that upon responding to the detectives' request for assistance and after discovering appellant driving, he activated the red and blue beacons on his police cruiser. Officer Hazlerig was riding with Officer Bruce and confirmed Officer Bruce's use of the emergency beacons on the police cruiser. "A plain reading of [R.C. 2921.331(B) ] shows that a signal from an officer need not be verbal; the blue lights and siren qualify as an applicable signal to stop." *State v. Wooden* (1993), 86 Ohio App.3d 23, 26, 619 N.E.2d 1132; see, also, *State v. Carter,* Montgomery App. No. 19833, 2004-Ohio-454, 2004 WL 225309, at ¶ 21 (holding that "[i]t is widely recognized that the use of the red and blue flashing lights on top of a police cruiser is a signal to stop, which would be properly interpreted as a command"). Officers Hazlerig and Bruce also verified that Officer Bruce had activated an accompanying siren while using the red and blue beacons.

{¶ 29} Although Officers Bruce and Hazlerig did not indicate how close they were to appellant's car when Officer Bruce activated the lights and siren on the police cruiser, Officer Hazlerig testified that they had followed appellant's car, and Detective Elkins testified that a police cruiser using lights and sirens got behind appellant's car. Such testimony, in combination with Officer Bruce's testimony about seeing appellant's actions during the pursuit, establish that Officers Bruce and Hazlerig were sufficiently near appellant's vehicle during the pursuit to see appellant's car; correspondingly, this evidence established that appellant could see the police cruiser with its activated lights and siren. Accordingly, we conclude that the above circumstances established that appellant had received a police officer's visible and audible signals to stop and that appellant was thus aware of the pursuit by police.

{¶ 30} Next, appellant contends that the evidence failed to establish that appellant willfully eluded the police. Although "willfully" as used in R.C. 2921.331(B) is not a mental state identified in R.C. 2901.22, the statute governing mental states, the term equates with the mental state of "purposely" outlined in R.C. 2901.22. *Hill* at ¶ 8. Under R.C. 2901.22:

(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶ 31} Proof of intent may be derived from circumstantial evidence, as direct evidence will seldom be available. *State v. Lott* (1990), 51 Ohio St.3d 160,

168, 555 N.E.2d 293; *State v. Tarver*, Summit App. No. 22057, 2004-Ohio-6748, 2004 WL 2893652, at ¶ 10. Circumstantial evidence is the "proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." *State v. Bentz* (1981), 2 Ohio App.3d 352, 355, 2 OBR 408, 442 N.E.2d 90, fn. 6, citing 1 Ohio Jury Instructions (1968), Section 5.10(d). Circumstantial evidence has probative value equal to direct evidence. *State v. Nicely* (1988), 39 Ohio St.3d 147, 151, 529 N.E.2d 1236.

{¶ 32} Here, the testimony established that after Officer Bruce activated the lights and siren on the cruiser and after police proceeded to follow appellant, appellant did not stop but continued to speed and prolong the police pursuit until he abruptly stopped on Buckingham. We may infer that appellant willfully eluded the police from such conduct, given that " '[i]t is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.' " *Lott*, 51 Ohio St.3d at 168, 555 N.E.2d 293, quoting *State v. Johnson* (1978), 56 Ohio St.2d 35, 39, 10 O.O.3d 78, 381 N.E.2d 637. We may also infer that appellant was willfully fleeing the police, given that the police had previously informed appellant that charges might be filed against him in regards to the above-noted rape and given appellant's own admissions to Young and Kiggans.

{¶ 33} Next, appellant contends that the evidence failed to establish the fleeing as a third-degree felony. As noted above, appellee indicted the fleeing as a third-degree felony, pursuant to R.C. 2921.331(C)(5)(a)(ii), alleging that, in fleeing, appellant "caused a substantial risk of serious physical harm to persons or property."

{¶ 34} R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Under R.C. 2901.01(A)(6), "serious physical harm to property" means any physical harm to property that does either of the following:

(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

{¶ 35} Under R.C. 2901.01(A)(5), "serious physical harm to persons" means:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶ 36} In *State v. Walby* (Mar. 6, 1992), Sandusky App. No. S–91–1, 1992 WL 42939, a defendant was charged with fleeing with the "substantial risk of serious physical harm to persons or property" enhancement. The officer involved in the pursuit testified that "he was traveling between eighty-five to ninety miles per hour but was not gaining on the [defendant's] car and briefly lost sight of it a few times." The court affirmed the conviction and concluded that "there was * * * probative evidence that [the defendant] caused a substantial risk of serious physical harm to persons or property by fleeing * * * at such a high speed."

{¶ 37} Here, Officer Bruce testified that after initiating his lights and siren, he had to use a substantial amount of acceleration during the pursuit. Detective Elkins also reiterated that during the pursuit, appellant was driving fast and probably double the speed limit, which Detective Elkins presumed was 25 m.p.h. Officer Bruce testified that the area of the pursuit contained residences and businesses. Detective Shockey also confirmed that Buckingham, the final location of the pursuit, contained residences, given his testimony that after police apprehended appellant, some of appellant's family members came "out of a northwestern corner house" that "was just 25, 30 feet" from the apprehension location. Thus, as in *Walby*, appellant created a substantial risk of physical harm to persons or property by fleeing at a high rate of speed through an area mixed with residences and businesses. Indeed, we may also consider that appellant created a substantial risk of physical harm to Officers Bruce and Hazlerig, the officers involved in pursuing appellant as he sped through a mixed commercial/residential area. See *State v. Barnett*, Tuscarawas App. No. 2004 AP 03 0019, 2005-Ohio-255, 2005 WL 135897, at ¶ 19 (examining a fleeing conviction with the "substantial risk of serious physical harm to persons or property" enhancement and noting that a trier of fact may consider the substantial risk to the officers pursuing the fleeing defendant); *State v. Hines* (Dec. 11, 1998), Ashtabula App. No. 97–A–0075, 1998 WL 964544 (same).

{¶ 38} For these reasons, we conclude that sufficient evidence supported appellant's underlying conviction for fleeing under R.C. 2921.331(B) and the third-degree felony enhancement in R.C. 2921.331(C)(5)(a)(ii). Therefore, we overrule appellant's second assignment of error.

{¶ 39} Next, we address appellant's third assignment of error. In his third assignment of error, appellant argues that his fleeing conviction is against the manifest weight of the evidence. We disagree.

{¶ 40} In determining whether a verdict is against the manifest of the evidence, we sit as a " 'thirteenth juror.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. We reverse a conviction on manifest-weight grounds for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717. Moreover, " 'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.' " *State v. Brown,* Franklin App. No. 02AP–11, 2002-Ohio-5345, 2002 WL 31194302, at ¶ 10, quoting *State v. Long* (Feb. 6, 1997), Franklin App. No. 96APA04–511, 1997 WL 52911.

{¶ 41} First, appellant asserts that his "fleeing" conviction is against the manifest weight of the evidence because there "were only 150 seconds from the time of the very first call for cruisers and the actual apprehension of [appellant]" and because Officer Bruce did not activate the cruiser's lights and siren "until [appellant] was, at a maximum, 2½ blocks from where he stopped." However, such circumstances do not belie the above evidence that nonetheless demonstrated that after Officer Bruce activated the lights and siren, appellant did not stop but continued to speed. We further reject appellant's above arguments because the explicit language of R.C. 2921.331(B) does not make the fleeing dependent on duration or distance. See *State ex rel. Burrows v. Indus. Comm.* (1997), 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (recognizing that we apply unambiguous statutes "according to the plain meaning of the words used"); see, also, *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 12 (noting that the legislature "should be held to mean what it has plainly expressed").

{¶ 42} We note Officer Bruce's testimony that he had activated his lights and siren on Mt. Vernon Avenue, while Officer Hazlerig testified that Officer Bruce had activated the lights and siren on Garfield Avenue. However, we find this discrepancy immaterial because both officers unequivocally stated that after Officer Bruce activated the lights and siren, appellant did not stop.

{¶ 43} We further note that testimony about appellant's admissions to fleeing came from witnesses with prior felony convictions and that under Evid.R. 609, such convictions impeach the witnesses' credibility. However, such circumstances do not make appellant's conviction against the manifest weight of the evidence, given the unequivocal testimony from the detectives and police officers that appellant failed to stop on order of Officer Bruce's signals to stop.

{¶ 44} Next, appellant argues that the R.C. 2921.331(C)(5)(a)(ii) "substantial risk of serious physical harm to persons or property" enhancement is against the manifest weight of the evidence because the record provides only estimates of appellant's speed. However, estimates of speed are sufficient to establish the "substantial risk of serious physical harm to persons or property" enhancement. See *Barnett*, 2005-Ohio-255, 2005 WL 135897, at ¶ 18–19; *Hines*, Ashtabula App. No. 97–A–0075, 1998 WL 964544.

{¶ 45} Last, appellant contends that the R.C. 2921.331(C)(5)(a)(ii) "substantial risk" enhancement is against the manifest weight of the evidence because the record failed to establish any "remotely close calls or particular places or incidents in which [appellant's] speed did anything more than ever-so-slightly increase the averages that apply to whether serious harm is possible." However, it is irrelevant to the enhancement whether appellant actually caused or almost caused serious physical harm to persons or property. See *State v. Love*, Summit App. No. 21654, 2004-Ohio-1422, 2004 WL 573895, at ¶ 19 (reviewing a fleeing conviction enhanced under R.C. 2921.331(C)(5)(a)(ii) and stating that "[a] jury could * * * reasonably find that the failure of [a defendant] to engage in a 'near collision' speaks to nothing more than [the defendant's] good luck and the careful driving on the part of other motorists on the road; such an assertion is irrelevant to our analysis because it fails to speak to the level of risk that [the defendant's] reckless driving created"); see, also, *State v. Semenchuk* (1997), 122 Ohio App.3d 30, 47, 701 N.E.2d 19 (reviewing an enhanced fleeing conviction and concluding that a defendant's failure to actually cause harm is of "no consequence").

{¶ 46} For these reasons, we conclude that appellant's conviction is not against the manifest weight of the evidence. Accordingly, we overrule appellant's third assignment of error.

{¶ 47} Finally, we address appellant's first assignment of error. In it, appellant contends that we must reverse his conviction because the trial court failed to provide appellant an opportunity for closing argument on the charge. We disagree.

{¶ 48} The United States Supreme Court has held that the Sixth Amendment "right to the assistance of counsel has * * * been given a meaning that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in

the adversary factfinding process" and that "closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge." *Herring v. New York* (1975), 422 U.S. 853, 857–858, 95 S.Ct. 2550, 45 L.Ed.2d 593. Likewise:

> The issue has been considered less often in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense.

Id. at 858–859, 95 S.Ct. 2550, 45 L.Ed.2d 593.

{¶ 49} In holding as such, the United States Supreme Court recognized:

> Some cases may appear to the trial judge to be simple—open and shut—at the close of the evidence. And surely in many such cases a closing argument will * * * be "likely to leave (a) judge just where it found him." But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel.

(Footnotes omitted.) Id. at 863, 95 S.Ct. 2550, 45 L.Ed.2d 593.

{¶ 50} Thus, in *Herring,* the United States Supreme Court reversed a defendant's conviction because a trial court had denied the defendant the opportunity to make a closing argument pursuant to a New York statute that conferred such power upon a judge in a nonjury criminal trial. Id. at 854, 856, 864–865, 95 S.Ct. 2550, 45 L.Ed.2d 593. In reversing the conviction, the court noted:

> There is no way to know whether * * * arguments in summation might have affected the ultimate judgment in this case. The credibility assessment was solely for the trier of fact. But before that determination was made, the [defendant], through counsel, had a right to be heard in summation of the evidence from the point of view most favorable to him.

(Footnote omitted.) Id. at 864, 95 S.Ct. 2550, 45 L.Ed.2d 593.

{¶ 51} Accordingly, we have held that unless there is a relinquishment of the right to a closing argument, the trial court's failure to allow closing argument constitutes reversible error. *Columbus v. Woodrick* (1976), 48 Ohio App.2d 274, 277–278, 2 O.O.3d 232, 357 N.E.2d 58; *Columbus v. Stennett* (1980), 70 Ohio App.2d 123, 126–127, 24 O.O.3d 163, 434 N.E.2d 1376; *State v. Carroll* (June 16, 1977), Franklin App. No. 77AP–8, 1977 WL 200232. Further, that relinquishment of the right to closing argument must be express, intentional, and voluntary.

*Carroll;* see, also, *State v. Jack,* 156 Ohio App.3d 260, 2004-Ohio-775, 805 N.E.2d 187, at ¶ 23 (recognizing that "the Tenth and Fifth Districts have held that in order for a [relinquishment] of the right [to a closing argument] to be effective, silence is not sufficient—the record must affirmatively show that the right was intentionally relinquished").

{¶ 52} Thus, in *Woodrick,* we automatically reversed a defendant's conviction because the trial court had failed to provide an opportunity for closing argument. Id. at 277–278, 2 O.O.3d 232, 357 N.E.2d 58. We noted that although "counsel did not request the right to argue at the close of trial," the record failed to establish a relinquishment of the right to make a closing argument. Id. at 277, 2 O.O.3d 232, 357 N.E.2d 58. In automatically reversing the defendant's conviction, we stated that "the *Herring* case is controlling." Id. at 277, 2 O.O.3d 232, 357 N.E.2d 58.

{¶ 53} Structural error is a type of error that is "per se cause for reversal." *State v. Fisher,* 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, at ¶ 9. Such is the case because a structural error " 'affect[s] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.' " Id., quoting *Arizona v. Fulminante* (1991), 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302. Likewise, the consequences of structural error "are necessarily unquantifiable and indeterminate." *Sullivan v. Louisiana* (1993), 508 U.S. 275, 281–282, 113 S.Ct. 2078, 124 L.Ed.2d 182. In this regard, under the dictates of *Fisher, Fulminante,* and *Sullivan,* a trial court's failure to allow closing argument absent an express, intentional, and voluntary relinquishment constitutes structural error, given our recognition in *Woodrick, Stennett,* and *Carroll* that such a failure constitutes reversible error, and given that pursuant to *Herring,* the trial court's failure to allow closing argument has "unquantifiable and indeterminate" consequences.

{¶ 54} Here, the trial court failed to provide appellant an opportunity for closing argument on the charge of fleeing, and although neither appellant nor his trial counsel requested closing argument, the record established no express, voluntary, and intentional relinquishment of such a closing argument. See *Woodrick,* 48 Ohio App.2d at 277–278, 2 O.O.3d 232, 357 N.E.2d 58; *Stennett,* 70 Ohio App.2d at 126–127, 24 O.O.3d 163, 434 N.E.2d 1376; *Carroll.* Nonetheless, appellee urges us to apply the plain-error doctrine here because appellant's trial counsel did not object to the trial court's failure to provide an opportunity for closing argument on the charge of fleeing.

{¶ 55} According to the plain-error doctrine, enunciated in Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "By its very terms, the rule places three limitations on a reviewing court's decision to correct

an error despite the absence of a timely objection at trial." *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Under the plain-error standard:

First, there must be an error, *i.e.,* a deviation from a legal rule. * * * *United States v. Olano* (1993), 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508, 518 (interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b] ). Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * [S]ee, also, *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777, 123 L.Ed.2d at 519 (a plain error under Fed.R.Crim.P. 52[b] is " 'clear' or, equivalently, 'obvious' " under current law). Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

*Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240.

{¶ 56} Since *Herring, Woodrick, Stennett,* and *Carroll,* the United States Supreme Court has suggested that structural error does not preclude the application of the plain-error doctrine. See *Johnson v. United States* (1997), 520 U.S. 461, 468–470, 117 S.Ct. 1544, 137 L.Ed.2d 718. Thus, in *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 23, the Ohio Supreme Court has stated:

[B]oth this court and the United States Supreme Court have cautioned against applying a structural-error analysis where * * * the case would be otherwise governed by Crim.R. 52(B) [the plain error doctrine] because the defendant did not raise the error in the trial court. * * * This caution is born of sound policy. For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to *encourage* defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected.

(Emphasis sic.)

{¶ 57} Accordingly, we have held that structural error "does not supply an automatic finding of plain error for unpreserved errors." *State v. Brooks,* Franklin App. No. 06AP–74, 2006-Ohio-5784, 2006 WL 3112113, at ¶ 22, citing *State v. Rector,* Carroll App. No. 01 AP 758, 2003-Ohio-5438, 2003 WL 22331979 (noting that, in *Johnson,* the United States Supreme Court recognized that structural error can be subject to the plain-error doctrine).

{¶ 58} Thus, although *Herring, Woodrick, Stennett,* and *Carroll* provide that structural, and therefore reversible, error stems from a trial court's failure

to provide a defendant the opportunity for a closing argument, absent an express, voluntary, and intentional relinquishment of that right, we hold here that the subsequent cases of *Johnson, Perry,* and *Brooks* establish that such structural error is nonetheless subject to the plain-error doctrine if a defendant did not object or otherwise raise the error in the trial court. Accordingly, we apply the plain-error doctrine here because appellant did not object to the trial court's failure to provide an opportunity for closing argument on the fleeing charge.

{¶ 59} In applying the plain-error doctrine, we first conclude that *Herring, Woodrick, Stennett,* and *Carroll* establish that the trial court committed error in not providing appellant an opportunity for closing argument on the fleeing charge. See *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240.

{¶ 60} Next, we examine whether the error was "plain." See *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240. As noted above, "[t]o be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings." *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240, quoting *State v. Sanders* (2001), 92 Ohio St.3d 245, 257, 750 N.E.2d 90. Thus, the error must be " 'clear' or, equivalently, 'obvious' " under current law. *United States v. Olano* (1993), 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting *United States v. Young* (1985), 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (analyzing Crim.R. 52(B)'s identical federal counterpart, Fed.R.Crim.P. 52(b)). A lack of "definitive pronouncement" from the United States Supreme Court or a state supreme court in combination with a disagreement among "lower courts" negates a determination that error is plain. See *Barnes,* 94 Ohio St.3d at 28, 759 N.E.2d 1240.

{¶ 61} Here, the United States Supreme Court in *Herring* established the precedence on the error stemming from a trial court's failure to provide a defendant an opportunity for closing argument. Id. at 858–859, 864–865, 95 S.Ct. 2550, 45 L.Ed.2d 593. However, we also recognize that "courts of appeals in Ohio have come to different conclusions" on a defendant's preserving the *Herring* issue for appeal. *State v. Newton* (June 27, 1997), Lake App. No. 96–L–058, 1997 WL 401557. As noted in *Newton:*

> On one side is the view illustrated by *Columbus v. Woodrick* (1976), 48 Ohio App.2d 274, 277–278 [2 O.O.3d 232], 357 N.E.2d 58, * * * where the court held that the failure of a court to allow defense counsel in a criminal trial to present a closing argument is reversible error, in the absence of a clear showing that there was an intentional waiver of the right. * * * Other courts of appeal have come to the same conclusion. See, *e.g., State v. Hoover* (May 11, 1992), Stark App. No. CA–8761, 1992 WL 127070 * * *.
>
> * * * [Conversely], [i]n *State v. Erickson* (Apr. 29, 1988), Lake App. No. 12–137 [1988 WL 41557], [the Eleventh District Court of Appeals] held that if a defendant neither requests a closing argument nor lodges an objection with the

trial court, then the defendant has waived the right to raise the issue on appeal. Other courts in Ohio have also adopted this position. See, *e.g., State v. Yoder* (Feb. 5, 1986), Wayne App. No.2099, 1986 WL 1740.

{¶ 62} Regardless, such differing opinions among Ohio courts of appeals do not preclude us from determining that the trial court committed error that is plain by failing to provide appellant an opportunity for closing argument on the fleeing charge. The differing opinions go to the preservation on appeal of the closing argument issue and not to the error itself established by the United States Supreme Court in *Herring*. Thus, we conclude that the trial court's failure to provide appellant an opportunity for closing argument on the fleeing charge constitutes error that is plain, given the precedence of *Herring* and its progeny. See *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240.

{¶ 63} We next examine the third prong of the plain-error doctrine, which is whether the error affected appellant's "substantial rights." *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240. As noted above, the Ohio Supreme Court has interpreted "this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. Similarly, the United States Supreme Court has stated that error affecting "substantial rights" "in most cases * * * means that the error must have been prejudicial: It must have affected the outcome of the [trial] court proceedings." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770, 123 L.Ed.2d 508. As noted above, the error here is structural and "structural error mandates a finding of 'per se prejudice.'" (Emphasis omitted.) *Fisher* at ¶ 9. Thus, we conclude that the error here affected appellant's "substantial rights." See *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240.

{¶ 64} In short, the trial court's failure to provide appellant an opportunity for closing argument satisfies the three prongs in *Barnes* and, thus, constitutes recognizable plain error under Crim.R. 52(B). Our recognition of that plain error, however, is discretionary. See *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240. For the following reasons, we decline to exercise our discretion to overturn appellant's conviction based on the trial court's error.

{¶ 65} The Ohio Supreme Court has stated:

Even if a forfeited error satisfies [the above noted] three prongs [of the plain-error doctrine], Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court "may" notice plain forfeited errors; a court is not obliged to correct them.

*Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240; see, also, *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 52 (Moyer, C.J., concurring) (recognizing that "[e]ven if the defendant establishes that plain error affected his substantial rights, the appellate court need not necessarily reverse the judgment

of the trial court"). Thus, the Ohio Supreme Court has "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. Reversing on plain error without considering such exceptional circumstances "'encourages litigants to abuse the judicial process and bestirs the public to ridicule it.'" See *Johnson,* 520 U.S. at 470, 117 S.Ct. 1544, 137 L.Ed.2d 718, quoting Traynor, The Riddle of Harmless Error (1970) 50.

{¶ 66} Here, given the evidence supporting appellant's third-degree felony fleeing conviction, we find no "manifest miscarriage of justice" requiring that we notice and correct the plain error from the trial court's failure to provide appellant an opportunity for closing argument on the fleeing charge, a charge tried only before the court, not the jury. See *Johnson,* 520 U.S. at 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (declining to reverse a conviction under the plain-error doctrine upon examining the "overwhelming" evidence that ultimately supported the defendant's conviction and determining that no "miscarriage of justice" would result from a failure to recognize plain error); see *State v. Vaughn,* Cuyahoga App. No. 79948, 2002-Ohio-4074, 2002 WL 1824972, at ¶ 32 (declining to reverse a conviction under the plain-error doctrine upon examining the "[a]mple" evidence that ultimately supported the defendant's conviction and determining that no "manifest miscarriage of justice" existed under the plain-error doctrine); *State v. Grogan* (Feb. 11, 1982), Cuyahoga App. No. 43679, 1982 WL 2348 (Markus, J., concurring) (suggesting that no "manifest miscarriage of justice" existed under the plain-error doctrine upon examining the "adequate" evidence to support a defendant's convictions).

{¶ 67} Again, R.C. 2921.331, the statute prohibiting fleeing, states:

(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

As noted above, Officers Bruce and Hazlerig unequivocally testified that after Officer Bruce activated the lights and siren, appellant did not stop, but continued to speed away. Detectives Shockey and Elkins confirmed the testimony that established appellant's underlying fleeing conviction.

{¶ 68} Next, we note that appellee indicted the fleeing as a third-degree felony, pursuant to R.C. 2921.331(C)(5)(a)(ii), alleging that in fleeing, appellant had "caused a substantial risk of serious physical harm to persons or property." As noted above, the evidence established that appellant had created a substantial risk of physical harm to persons or property by fleeing in a car at a high rate of speed through an area mixed with residences and businesses, and appellant also

had created a substantial risk of physical harm to Officers Bruce and Hazlerig during the fleeing. See *Walby; Hines; Barnett,* 2005-Ohio-255, 2005 WL 135897, at ¶ 19.

{¶ 69} To be sure, appellant has raised issues concerning the strength of the evidence supporting the third-degree felony fleeing charge. And as the dissent asserts, there were discrepancies among the police officers' testimonies. However, we rejected these challenges in our discussion and holding that appellant's third-degree felony conviction is based on sufficient evidence and is not against the manifest weight of the evidence.

{¶ 70} In the final analysis, because we have concluded that no "manifest miscarriage of injustice" exists here, we decline to exercise our discretion to recognize and correct the plain error stemming from the trial court's failure to provide appellant an opportunity for closing argument following the bench trial on the fleeing charge. See *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240.

{¶ 71} In summary, although the trial court committed structural error in failing to provide appellant an opportunity to make a closing argument on the fleeing charge, the plain-error doctrine applies here because appellant's defense counsel failed to object to such error at trial. Although the trial court committed plain error in failing to provide appellant an opportunity to make a closing argument on the fleeing charge, we need not recognize that error for the reasons noted above. As such, we overrule appellant's first assignment of error.

{¶ 72} For the foregoing reasons, we overrule appellant's first, second, and third assignments of error. Thus, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BROWN, J., concurs.

McGRATH, J., dissents.

McGRATH, Judge, dissenting.

{¶ 73} Being unable to concur on the final aspect of the majority's opinion, I am compelled to respectfully dissent.

{¶ 74} The majority's opinion thoroughly and correctly sets forth the law applicable to the present appeal and concludes that despite defense counsel's failure to object, the trial court, in failing to afford counsel an opportunity for final argument, committed structural error on the fleeing charge, and that the plain-error doctrine is applicable thereto.

{¶ 75} The majority concludes that plain error need not be corrected except to prevent a "manifest miscarriage of justice." The majority finds no such miscarriage of justice in view of overwhelming evidence.

{¶ 76} Nevertheless, I must depart company with the majority on the question of whether the defendant's inability to have even argued his view of the evidence to the trier of fact on the critical question of whether his conduct created a "substantial risk of * * * harm to persons or property." The majority opinion at ¶ 68 established cause for reversal. The risk-of-harm element makes the fleeing charge a felony of the third degree.

{¶ 77} The defendant was acquitted by a jury of the greater charges of rape and felonious assault, and the trial judge, having heard additional evidence on the fleeing charge, was "hovering" on her decision from Friday through Tuesday.

{¶ 78} The error at hand is structural and a per se cause for reversal. *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222. Per se prejudice exists affecting a substantial right. Arguments exist under the facts of this case concerning some discrepancies among the police officers' testimonies; only approximations as to the speed of defendant's vehicle; the length of pursuit (one officer has it at two and one-half blocks); the knowledge and time thereof of defendant as to beacons and/or sirens; whether a place existed to pull over before he did so; and the credibility of the inmate witnesses.

{¶ 79} Moreover, argument may be made as to what specific evidence existed, or was lacking, detailing the action of defendant's vehicle coupled only with a general description of the neighborhood (as mixed business and residential).

{¶ 80} All these factors may have been argued to the trier of fact in the hope of raising a reasonable doubt in the mind of the trial court. As stated by the United States Supreme Court in *Herring v. New York* (1975), 422 U.S. 853, 864, 95 S.Ct. 2550, 45 L.Ed.2d 593:

> There is no way to know whether * * * arguments in summation might have affected the ultimate judgment in this case.

{¶ 81} Whether or not the defendant would have been found guilty, I believe under the facts of this case that being denied the opportunity to argue presents a situation for the exercise of judicial discretion and I would, therefore, reverse and remand on the first assignment of error.

{¶ 82} Having so concluded, I would hold assignments of error two and three to be moot.