[Cite as *State v. Monnin*, 2017-Ohio-1095.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-07-058 |
| | : | O P I N I O N |
| - vs - | | 3/27/2017 |
| | : | |
| KYLE S. MONNIN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 15 CR 31404

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Diehl & Hubbell, LLC, Martin E. Hubbell, 304 East Warren Street, Lebanon, Ohio 45036, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Kyle S. Monnin, appeals from his conviction in the Warren County Court of Common Pleas for failure to comply with the order or signal of a police officer. For the reasons set forth below, we affirm his conviction.

{¶ 2} On October 19, 2015, appellant was indicted for failure to comply with the order or signal of a police officer, in which it was alleged that he caused a substantial risk of serious

physical harm to persons or property in violation of R.C. 2921.331(B), a felony of the third degree. Appellant entered a not guilty plea to the charge.

{¶ 3} A jury trial commenced on May 12, 2016. The state's only witness at trial was Ohio State Highway Patrol Trooper Jacob Kunka. Kunka testified that at approximately 3:41 p.m. on July 17, 2015, he was sitting in his marked highway patrol cruiser on the northbound entrance ramp from State Route 63 to Interstate 75 (I-75). Kunka noticed appellant driving a lime green motorcycle at a rapid rate of speed. Although the posted speed limit on I-75 was 65 m.p.h., Kunka visually estimated that appellant was traveling at a rate of speed in excess of 100 m.p.h. Using his ultralight laser speed-measuring device, Kunka clocked appellant's speed at 111 m.p.h.

{¶ 4} As appellant passed by, Kunka immediately began to enter I-75 in order to initiate a traffic stop. Kunka did not immediately activate his overhead lights. He waited until he had entered traffic and was up to speed before activating his cruiser's lights and sirens. He explained, "When I got into traffic it became clear due to traffic being heavy for one that I needed to activate my lights so that I could get through traffic and as well I could see the [appellant's] vehicle continuing at a high rate of speed weaving in and out of traffic that he was not going to stop for me."

{¶ 5} Kunka stated that appellant was passing vehicles like they were standing still, and Kunka could not get close enough to read appellant's license plate. According to Kunka, appellant was "going faster than [he] initially checked him at. * * * [H]e's actively accelerating." Kunka observed appellant make a "pass towards the right through the lanes and he went to the left * * * on the berm at a high rate of speed." Kunka noticed that other motorists driving near appellant's motorcycle were forced to apply their brakes to prevent an accident.

{¶ 6} Because of the heavy traffic on the interstate, Kunka determined that "it was not

safe for [him] or the other people around [him] to continue to give chase." Although Kunka turned off his lights and sirens and discontinued his pursuit of appellant's motorcycle, he continued to travel northbound on I-75 in case he came across any accidents appellant may have caused or been involved in. Less than a minute after stopping his pursuit and passing the exit for State Route 122 in Middletown, Ohio, Kunka received information from dispatch about an accident involving a motorcycle like the one he had been chasing. Another driver had reported that a green motorcycle had travelled into the grass in a ditch on State Route 122.

{¶ 7}    Kunka turned his cruiser around and returned to State Route 122. Kunka did not immediately see a crash involving the green motorcycle so he decided to check behind nearby businesses for signs of the motorcycle. In the parking lot of a CVS store, Kunka found appellant sitting on top of his parked, lime green motorcycle. As Kunka approached appellant, appellant took off his helmet, raised his hands in the air, and stated, "I give up, I'm done." When Kunka asked appellant why he was running from him and what was going on, appellant stated, "I saw you, I was scared. I didn't want to get in trouble. I guess that's why I didn't stop, that's why I didn't stop."

{¶ 8}    Kunka noticed that appellant's collarbone was injured and that his motorcycle had sustained damage, which consisted of numerous scratches and a "very sizeable dent" to the gas tank. Kunka called for an ambulance, but appellant declined treatment. Kunka then placed appellant under investigative detention and read appellant his *Miranda* rights. Appellant waived his rights and spoke with Kunka, telling Kunka that when trying to get off the interstate he "laid [his bike] down." Appellant stated, "I saw you, I got scared. I didn't want to get in trouble, you know, I've been in trouble before, I don't want to get in any more trouble. That's why I didn't stop. I tried to get off the exit." Appellant then provided Kunka with a written statement, which stated, "I, Kyle Monnin, was traveling on 75 North and saw

Officer Kunka on the shoulder and tried to get off at the next exit cuz [sic] it scared me and took the turn to[o] fast and laid it down."

{¶ 9} Kunka testified he cited appellant for speeding and driving under suspension, but did not arrest him. After advising appellant that charges would be filed against him, Kunka dropped appellant at a nearby restaurant so that appellant could wait for a family member to pick him up.

{¶ 10} Following Kunka's testimony, the state rested its case-in-chief. The trial court accepted into evidence a dashcam recording of Kunka's pursuit of appellant, appellant's written statement to Kunka, and photographs of appellant's motorcycle. Appellant then moved for acquittal pursuant to Crim.R. 29, but his motion was denied by the trial court. Thereafter, appellant rested his defense without calling any witnesses and the matter was submitted to the jury.

{¶ 11} The jury returned a guilty verdict. In finding appellant guilty of failing to comply with the order or signal of a police officer, the jury specifically found appellant caused a substantial risk of serious physical harm to persons or property. The trial court sentenced appellant to 36 months in prison and imposed a five-year Class II driver's license suspension.

{¶ 12} Appellant timely appealed his conviction, raising three assignments of error. For ease of discussion, we will address appellant's assigned errors together.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29.

{¶ 15} Assignment of Error No. 2:

{¶ 16} APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE.

{¶ 17} Assignment of Error No. 3:

{¶ 18} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 19} In his first, second, and third assignments of error, appellant argues the trial court erred by denying his Crim.R. 29 motion for acquittal, his conviction was not supported by sufficient evidence, and his conviction was against the manifest weight of the evidence. Specifically, appellant contends the state failed to prove that he "actually received a visible or audible signal" from Trooper Kunka to stop. He argues the state failed to present evidence that "he ever looked back at the officer, saw flashing lights, or was within a distance to hear a siren."

{¶ 20} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5; *State v. Huston*, 12th Dist. Fayette Nos. CA2006-05-021 and CA2006-06-022, 2007-Ohio-4118, ¶ 5.

{¶ 21} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶ 22}** On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶ 23}** Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. *See also State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43 ("a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency").

**{¶ 24}** Pursuant to R.C. 2921.331(B), "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police

officer to bring the person's motor vehicle to a stop." If the offender's operation of the motor vehicle "caused a substantial risk of serious physical harm to persons or property," the offense is a third-degree felony. R.C. 2921.331(C)(5)(a)(ii).

{¶ 25} A "substantial risk" is defined as "a strong possibility * * * that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "Serious physical harm to persons" is defined to include, in relevant part, any of the following:

> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5). "Serious physical harm to property" is "any physical harm to property" that either "[r]esults in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace" or "[t]emporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time." R.C. 2901.01(A)(6).

{¶ 26} After reviewing the record, weighing inferences and examining the credibility of the witness, we find that appellant's conviction for failure to comply with the order or signal of a police officer is supported by sufficient evidence and is not against the weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offense proven beyond a reasonable doubt.

{¶ 27} At trial, the state introduced evidence that appellant was traveling at an excessive rate of speed – more than 46 m.p.h. above the posted speed limit – during heavy

traffic. Appellant changed lanes, causing other drives to brake, and he traveled on the berm. He continued to accelerate his speed despite the fact that Kunka's cruiser's lights and sirens were activated, thereby ordering him to stop. After weaving in and out of traffic and driving on the berm, appellant attempted to exit the highway. Although he crashed or "laid down" his motorcycle in a ditch, he was able to drive the motorcycle to a nearby business's parking lot. When Kunka caught up with appellant, appellant admitted that he had seen Kunka, stating, "I saw you, I was scared." He further admitted that he "tried to get off the exit" because he "didn't want to get in trouble." Therefore, given appellant's immediate acceleration upon encountering Kunka's cruiser and Kunka's activation of his lights and sirens, the unpredictable and dangerous manner in which appellant drove his motorcycle in heavy traffic, and his effort to avoid getting into trouble by exiting the interstate, there was ample evidence for the jury to find that appellant "willfully" fled or eluded Kunka. *See, e.g., State v. Cole*, 3d Dist. Seneca No. 13-10-30, 2011-Ohio-409, ¶ 25-26.

{¶ 28} Further, although appellant claims the state failed to show that he "received" a visible or audible signal from Kunka to stop his motorcycle, there was evidence presented at trial demonstrating otherwise. The dashcam recording from Kunka's cruiser and Kunka's testimony demonstrates that Kunka's lights and sirens were activated during the trooper's pursuit of appellant.[1] Although appellant argues he never saw the flashing lights or heard the siren, his conduct and statements to Kunka suggest otherwise. After Kunka's cruiser's lights and sirens were activated, appellant continued to accelerate his speed while weaving in and out of traffic. When Kunka encountered appellant at a local business after his crash, appellant raised his hands in the air and stated, "I give up, I'm done." Appellant also acknowledged that he saw Kunka, telling Kunka, "I saw you, I got scared. I didn't want to get

_____

1. The dashcam recording shows the reflection of the cruiser's flashing lights on other vehicles traveling on the interstate.

in trouble * * *. That's why I didn't stop. I tried to get off the exit." The jury was entitled to rely on this evidence in finding that appellant willfully fled from Kunka's visible and audible signal to stop his motorcycle. *See State v. Johnson*, 12th Dist. Warren No. CA2015-09-086, 2016-Ohio-7266, ¶ 138 (noting that a jury is free to believe all, part, or none of a witness's testimony).

{¶ 29} The evidence introduced at trial also demonstrated that appellant's actions in failing to comply with the trooper's order to stop caused a substantial risk of serious physical harm to persons and property. Not only did appellant's excessive rate of speed pose a substantial risk of harm to himself, Trooper Kunka, and all other motorists traveling on the interstate, but his actions also created a substantial risk of serious physical harm to his own motorcycle, Kunka's cruiser, and the vehicles of the other motorists traveling on I-75. *See, e.g., State v. Wells*, 11th Dist. Ashtabula No. 2011-A-0073, 2012-Ohio-4459, ¶ 78; *State v. Edwards*, 9th Dist. Summit No. 24546, 2009-Ohio-3558, ¶ 22; *State v. Garrard*, 170 Ohio App.3d 487, 2007-Ohio-1244, ¶ 33-38. Kunka testified that he "terminated [his] chase * * * of the suspect vehicle because [he] deemed that it was unsafe for myself and the motoring public for [him] to continue as well as the defendant." Kunka also stated that appellant and his motorcycle sustained injuries as a result of his crash. Appellant injured his collarbone, his motorcycle obtained a number of scratches, and there was a "very sizeable dent" to the motorcycle's gas tank.

{¶ 30} Accordingly, given the evidence presented, we find that the jury did not lose its way and create such a manifest miscarriage of justice such that appellant's conviction for failure to comply with the order or signal of a police officer must be reversed and a new trial ordered. As appellant's conviction was not against the manifest weight of the evidence, we necessarily conclude that the state presented sufficient evidence to support the jury's finding of guilt and to overcome appellant's Crim.R. 29 motion. *See Hart*, 2012-Ohio-1896, ¶ 43.

{¶ 31}  Appellants first, second, and third assignments of error are, therefore, overruled.

{¶ 32}  Judgment affirmed.

RINGLAND and PIPER, JJ., concur.