[Cite as *State v. Tolbert*, 2013-Ohio-577.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98310**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## VERNON TOLBERT III

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-552752

**BEFORE:** Kilbane, J., Celebrezze, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** February 21, 2013

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Stephanie Heibertshausen
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Vernon Tolbert III ("Tolbert"), appeals the trial court's judgment denying his motion to suppress. For the reasons set forth below, we affirm.

{¶2} In July 2011, Tolbert and codefendant, Richard Williams ("Williams"), were charged in a six-count indictment. Counts 1 and 6 charged Tolbert and Williams with drug trafficking and carried forfeiture specifications and a one-year firearm specification. Count 2 charged each of them with drug possession and carried forfeiture specifications and a one-year firearm specification. Count 3 charged each of them with possessing criminal tools and carried forfeiture specifications. Count 4 charged Tolbert with having a weapon while under disability and carried a weapon forfeiture specification. Count 5 charged Tolbert and Williams with receiving stolen property.

{¶3} In September 2011, Tolbert filed a motion to suppress the evidence obtained against him. Specifically, he argued that the Cleveland police lacked reasonable suspicion to stop his vehicle. The state of Ohio ("State") opposed, and the trial court held a hearing on the motion in February 2012. The following evidence was adduced at the suppression hearing.

{¶4} Detective Kevin Fairchild ("Fairchild") of the Cleveland Police Department testified that in July 2011 he conducted an investigation of Tolbert and Williams based on information he obtained from a confidential reliable informant ("CRI"). The CRI

advised that "Moozey," who was later determined to be Williams and "Z," who was later determined to be Tolbert, were trafficking drugs together. On July 14, 2011, Fairchild participated in a controlled drug transaction with the CRI. The CRI placed a call to Williams from Fairchild's cell phone. The call was on speakerphone, so Fairchild heard the CRI order crack cocaine from "Moozey." Fairchild then drove the CRI to Williams's residence on West 97th Street in Cleveland. Fairchild searched the CRI and determined that he was free of drugs and contraband. Fairchild gave the CRI buy money to complete the drug transaction with Williams. The CRI met with Williams on the outside deck of Williams's second floor apartment. Fairchild was not able to see the transaction, but two other detectives, who assisted with the surveillance, were able to see that Tolbert was also outside. The CRI returned with the requested crack cocaine. Fairchild testified that he observed Tolbert's vehicle outside Williams's residence. The CRI informed Fairchild that Tolbert was Williams's driver because Williams did not have a vehicle.

{¶5} The next day, the CRI and Fairchild placed another controlled call to Williams, and the CRI ordered the same amount of crack cocaine. Fairchild drove the CRI to Williams's apartment again and waited outside while the CRI entered Williams's residence. The CRI returned approximately 15 minutes later with the crack cocaine. On July 19, 2011, the CRI and Fairchild placed a third controlled call to Williams. The CRI was fitted with a recording device, which was monitored by Fairchild. Fairchild drove the CRI to Williams's residence again. Williams was alone, but stated to the CRI that "Z" was bringing drugs to him. Approximately 15 minutes later, Tolbert arrived in a

Chevy Camaro. Fairchild observed Tolbert enter through the back gate area and proceed upstairs to the second floor deck. Fairchild testified that the other detectives observed three males on the deck. The CRI returned with the ordered crack cocaine and said that "Z" brought it to him.

{¶6} Then on July 21, 2011, the CRI and Fairchild placed a fourth controlled call to Williams. The CRI ordered an ounce and a half of crack cocaine. Williams stated that he was at his father's house and that he has to wait for "Z" to pick him up. The two other detectives were conducting surveillance on Williams while Fairchild was with the CRI. The CRI arranged to meet Williams at the Holiday Inn at West 150th Street and Interstate 71 in Cleveland. The detectives observed Tolbert arrive at Williams's father's home in his Chevy Camaro. Tolbert exited his vehicle and approached Williams, who was sitting on the front porch. Williams and Tolbert spoke for a few minutes and then Williams got into the car with Tolbert. The detectives followed Tolbert and Williams as they drove to the buy site. Fairchild testified that during the phone call, he heard Williams state that he had the drugs on him, but had to wait for Tolbert to pick him up. Fairchild further testified that the detectives stopped Tolbert approximately 100 yards from the buy site because they "determined during the phone calls that [Williams] stated that he had the drugs on him already and he was just waiting for [Tolbert] to pick him up." Fairchild was with the CRI and could observe the stop. The detectives secured Tolbert and Williams and searched Tolbert's car, where they found a gun under the driver's seat, the ordered crack cocaine, and a digital scale.

{¶7} At the conclusion of the hearing, the trial court denied Tolbert's motion to suppress, finding that the CRI provided reliable information, which gave the police a reasonable basis to stop the vehicle. The trial court stated that:

> the[se] facts suggest that the state had a fair degree of confidence in relying on the last representations made by the CRI. Those facts, obviously, have to do with the amount of time which they were involved with the CRI over a period of days during which transactions were made, during which [Tolbert] was in the company of [Williams] virtually at the same time that transactions were being made.
>
> So the CRI, for the purposes of this scenario and the information provided was credible.
>
> And then the next question is, if credible was it sufficient to allow the police to act upon it * * * was it sufficient information, credible information upon which a decision to stop this vehicle could have been made[?]
>
> And the answer to that again is yes.

{¶8} Tolbert then pled no contest to the charges, and the trial court found him guilty of all counts and specifications. The trial court merged each of the firearm specifications and Counts 1, 2, and 6 for purpose of sentencing. The court ordered that the one-year firearm specification be served prior and consecutive to the four-year sentence on Count 1. The trial court ordered one-year in prison on each of Counts 3, 4, and 5, to be served concurrent to each other and concurrent to Count 1 for total of five years in prison.

{¶9} Tolbert now appeals, raising the following sole assignment of error for review.

ASSIGNMENT OF ERROR

The trial court erred in entering an order denying [Tolbert's] motion to suppress evidence.

## Standard of Review

**{¶10}** In reviewing a trial court's ruling on a motion to suppress, the reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. *State v. DePew*, 38 Ohio St.3d 275, 277, 528 N.E.2d 542 (1988); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. *See State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994), citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). The reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. *Id.*; *see also State v. Claytor*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906 (4th Dist.1993).

## Search and Seizure

**{¶11}** In his sole assignment of error, Tolbert argues that the police should have obtained a search warrant prior to the search his vehicle. He further argues that the police lacked probable cause to stop his car.

**{¶12}** The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, with some exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A warrantless arrest is unconstitutional unless the arresting officer has probable cause to make the arrest at that time. *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974). Probable cause exists when officers have

"'facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information' that would sufficiently 'warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'"  *State v. Fannin*,  8th Dist. No. 79991, 2002-Ohio-6312, quoting *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶13} Furthermore, the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot."  *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).   In deciding whether reasonable suspicion exists, courts must examine the "'totality of the circumstances' of each case to determine whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."  *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see also State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus, citing *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶14} We agree with the trial court's finding that the police, in the instant case, had sufficient and credible information upon which to stop Tolbert's vehicle.   The evidence revealed that Fairchild orchestrated an investigation concerning the sale of illegal drugs with the CRI's assistance.   Fairchild testified that three controlled buys were completed with the CRI and Williams — the first buy on July 14, 2011, the second buy on

July 15, 2011, and the third buy on July 19, 2011. The controlled buys were arranged between the CRI and Williams on Fairchild's cell phone, while Fairchild listened on speakerphone. When the detectives conducted their surveillance, they observed Tolbert's vehicle parked outside of Williams's residence and observed Tolbert outside on July 14, 2011, while the CRI completed the drug transaction with Williams. During the controlled buy on July 19, 2011, Fairchild heard Williams tell the CRI that Tolbert would be bringing the drugs to him. Detectives then observed Tolbert arrive at Williams's residence in his vehicle. Tolbert entered through the back gate area and proceeded upstairs to the second floor deck. The detectives observed three males on the deck. The CRI then returned with the crack cocaine and said that Tolbert brought it.

{¶15} When the fourth controlled call was placed on July 21, 2011, which was seven days after the first controlled buy, Fairchild testified that Williams stated that he had the drugs, but he was at his father's house, so he had to wait for Tolbert to pick him up. The other detectives conducted surveillance on Williams, while Fairchild was with the CRI. The detectives observed Tolbert arrive at Williams's father's home in his vehicle. Williams and Tolbert spoke for a few minutes and then Williams got into the car with Tolbert. The detectives followed Tolbert and Williams as they drove to the buy site. Based on Williams's statement to the CRI, the detectives determined that the drugs were in the car and stopped Tolbert and Williams approximately 100 yards from the buy site. When the detectives searched Tolbert's car, they found the crack cocaine the CRI ordered, a gun, and a scale.

{¶16} In *State v. Hale*, 8th Dist. No. 92856, 2010-Ohio-3306, we addressed an analogous situation where we concluded that the police had probable cause to stop the defendant's vehicle and arrest him. The testimony at the suppression hearing revealed that a controlled buy was arranged for a CRI to purchase three pounds of marijuana from a dealer. The officers set up surveillance and observed the defendant drive up to the dealer's mobile home. The passenger exited the vehicle with a black garbage bag in his hand, while the defendant remained in his vehicle. The passenger entered the mobile home and left four minutes later, empty-handed. The police then decided to stop the defendant and the passenger. While the dealer's wife entered the mobile home at the same time with a bag in her hand, we still found the police had probable cause to stop defendant's car because the car arrived at the time the supplier was supposed to arrive, the passenger exited the car carrying a bag that was consistent with the shape of three pounds of marijuana, the passenger exited the mobile home with nothing in his hands, the defendant and the passenger began to drive away from the trailer park, and the CRI called the dealer ten minutes later and confirmed the delivery of the drugs. Based on the totality of these circumstances, we held that the evidence supported the trial court's finding that probable cause existed to stop defendant's vehicle. *Id.* at ¶ 15.

{¶17} Similarly, in the instant case, we find that competent and credible evidence to support the trial court's finding that probable cause existed to stop Tolbert's vehicle. The police used a CRI to complete three successful controlled buys within five days. The fourth controlled buy was a week after the first buy was completed. The controlled

buys were arranged while Fairchild listened on speakerphone. The officers' surveillance revealed that Tolbert was present at the first buy and four days later on the third buy. On the fourth buy, Fairchild heard Williams state that he was at his father's house and that he has to wait for "Z" to pick him up. The detectives then observed Tolbert pick up Williams and drive to the meet location. The totality of these circumstances gave Fairchild a particularized and objective basis for suspecting legal wrongdoing and gave the police probable cause to stop and search Tolbert's vehicle. Therefore, the trial court's denial of Tolbert's motion to suppress was proper.

{¶18} Accordingly, the sole assignment of error is overruled.

{¶19} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
PATRICIA A. BLACKMON, J., CONCUR