[Cite as *State v. Elliot*, 2014-Ohio-3723.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100740**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOHNDRELL ELLIOT

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573843-F

**BEFORE:**  Kilbane, J., Rocco, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**  August 28, 2014

**ATTORNEY FOR APPELLANT**

James R. Willis
Willis Blackwell & Watson
323 W. Lakeside Avenue
Suite 420
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
T. Allan Regas
Gregory Paul
Amy Venesile
Assistant County Prosecutors
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

**{¶1}** Defendant-appellant, Johndrell Elliot ("defendant"), appeals from his conviction for failure to comply with the order of a police officer, thereby causing a substantial risk of harm, with forfeiture specifications. Having reviewed the record and the controlling case law, we affirm.

**{¶2}** On May 2, 2013, the defendant and codefendants, Juanita McClain ("McClain"), Richard Fort ("Fort"), Chrystal Gardenshire ("Gardenshire"), and Dwight Bullard ("Bullard"), were indicted pursuant to a 16-count indictment in connection with an alleged drug trafficking operation. Counts 1-4 charged Fort and Gardenshire with possession of heroin and cocaine, and trafficking in heroin and cocaine, with firearm and forfeiture specifications. Counts 5-8 charged Fort and Gardenshire with possession of criminal tools, having weapons while under disability, and receiving stolen property. Counts 13-15 charged Bullard with possession of heroin, trafficking in heroin, and possession of criminal tools. As is relevant herein, Counts 9-11 charged the defendant and McClain with possession of, and trafficking in, more than five but less than ten grams of cocaine, with forfeiture specifications (money, cell phone, and automobiles). Count 12 charged the defendant and McClain with possession of criminal tools (cell phones, money, and automobiles), and Count 16 charged the defendant with failure to comply with the order or signal of a police officer, with a furthermore clause alleging that he caused a substantial risk of serious harm, and a forfeiture specification (automobile).

The charges against the codefendants, other than defendant, were eventually resolved without trials.[1]

{¶3} On June 3, 2013, the defendant filed a motion to suppress the evidence, asserting that the police lacked probable cause to stop his vehicle and that he was subject to an illegal search and arrest. On July 23, 2013, the trial court held an evidentiary hearing on the motion to suppress. The state's evidence demonstrated that on April 23, 2013, a search warrant was obtained for a suspected drug house located at 11627 Ely Avenue in Cleveland, the residence of Gardenshire, in connection with a joint investigation undertaken by CMHA and the Cleveland Police Third District Vice Unit. On April 23, 2013, immediately prior to executing the warrant, the Cleveland police had a confidential informant make a controlled drug purchase with $500 in marked currency. The informant was searched at the third district police station, determined to have no drugs or money, and was given $500 in marked currency. Cleveland Police Detective Gerald Crayton ("Detective Crayton") then drove the informant to meet up with McClain. Detective Crayton observed as the informant met with McClain for about one minute. McClain then drove approximately 40 feet away to another car. Detective Crayton

---

[1] On December 11, 2013, McClain pled guilty to a fourth-degree felony charge of drug trafficking with forfeiture specifications and was sentenced to one year of community control sanctions. On July 17, 2013, Fort pled guilty to attempted drug possession (misdemeanor) with forfeiture specifications and was sentenced to time served. On February 21, 2014, Bullard pled guilty to a fourth-degree felony charge of drug trafficking with forfeiture specifications and was later sentenced to one year of community control sanctions. On July 22, 2013, Gardenshire pled guilty to fourth-degree felony drug trafficking with forfeiture specifications, and having a weapon while under disability, and was later sentenced to one year of community

radioed the license plate numbers to the other officers involved in the surveillance and reported that the second car drove off and proceeded toward East 116th Street.

{¶4} According to Detective Crayton, when the informant returned to the detective's vehicle, the informant no longer had the buy money and had suspected crack cocaine. The detective obtained the suspected narcotics and the informant was released a short time later. Cocaine was also found on McClain during the course of her arrest.

{¶5} Sergeant Robert Tucker ("Sergeant Tucker") testified that he observed McClain's actions from an unmarked police car. He heard the radio broadcast regarding the second car, a green Chrysler Sebring. Sergeant Tucker activated his lights and sirens and stopped the Sebring, which was driven by the defendant, at East 116th Street and Ely Avenue. As Sergeant Tucker and his partner, Detective Charles Davis ("Detective Davis"), walked toward the vehicle, Detective Davis advised the defendant to get off his cell phone, but defendant opened his car door, striking Detective Davis. He then sped off. According to Sergeant Tucker, the defendant nearly ran over Detective Davis. Sergeant Tucker further testified that defendant drove at approximately 55 miles per hour through the residential district.

{¶6} Other officers activated their lights and sirens and pursued the vehicle. The defendant subsequently abandoned his car and fled a short distance on foot, and was then apprehended near Harvey Avenue and East 115th Street. At the time of his arrest, the defendant was in possession of the prerecorded buy money.

---

control sanctions.

{¶7} The defendant testified on his own behalf and denied that he was involved in drug trafficking. He stated that he spoke with McClain and obtained money that she owed him, which was $480 for getting her son a rental car. After he obtained the money from McClain, a man who was dressed "all in black" approached him and demanded his cell phone, but at no point indicated that he was a police officer or that the defendant was under arrest. The defendant stated that he did not know that the man was a police officer, so he panicked and fled. He also stated that the officers pursued him but did not activate their sirens.

{¶8} On August 6, 2013, in open court, the trial court denied the motion to suppress and stated:

> In this case, under *Terry*, [392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] under the plain view and under the search incident to arrest analyses to the investigative stop, the seizure of the money and the drugs are lawful.

> With respect to Defendant Elliot, the CI met with codefendant Juanita McClain to provide her with buy money and to purchase drugs. Defendant Elliot entered her vehicle for a short period of time, [he then] returned to his vehicle. There was an investigatory stop of Miss McClain's vehicle[,] which revealed crack cocaine. When officers attempted an investigatory stop with Elliot, he struck the officer with the car door and fled away in his vehicle, almost running over Detective Davis. Following the chase of Elliot, he was arrested for fleeing. A search incident to arrest analyses [of the] vehicle was provided to the CI, so I believe that the stop and the seizure of the buy money was legal; therefore, on behalf of Mr. Elliot, I'm going to deny the motion to suppress.

{¶9} On October 30, 2013, the matter proceeded to trial on the merits, and the defendant waived his right to a jury trial only as to the forfeiture specifications.

**{¶10}** The evidence presented by the state indicated that during the evening of April 23, 2013, the informant was searched at the third district and had no drugs or other contraband. Detective Crayton gave the informant $500 in marked currency, and drove him to meet McClain, who was in a green Honda. Detective Crayton observed as the informant got into McClain's car and remained there for about a minute. McClain and the informant drove about 40 feet away and, according to Detective George Redding ("Redding"), the defendant arrived a few minutes later, parked behind McClain's car, then got into McClain's car. After a few minutes, the defendant exited McClain's car and drove eastbound on Ely Avenue as McClain proceeded westbound.

**{¶11}** Detective Davis and Sergeant Tucker activated their lights and sirens and stopped the defendant's vehicle, then pulled behind it at East 116th Street and Honeydale. Defendant rolled his window down but he was talking on his cell phone. Detective Davis told the defendant to end the call. The defendant ended the call and then abruptly opened the door to exit the car in an attempt to flee. Detective Davis pushed against the door to keep the defendant from fleeing, and defendant put the car into gear and sped away, with Detective Davis grasping the door. Sergeant Tucker and Detective Davis followed and radioed for assistance.

**{¶12}** Detective Anthony Spencer ("Detective Spencer") joined the pursuit and located the vehicle a few minutes later on Harvey Avenue at East 111th Street. The defendant was arrested approximately one-eighth of a mile away, following a brief chase. The marked $500 was recovered as the defendant was patted down.

**{¶13}** McClain was later arrested, and according to Officer Jovan Larkin ("Larkin"), she had a bag of suspected cocaine hidden on her person.

**{¶14}** McClain testified on behalf of the defendant. She stated that she was meeting him to pay him the money her son owed for a rental car. She also asserted that after getting his money, the defendant drove off. With regard to the drugs recovered during her patdown, McClain testified that she had obtained the drugs earlier in the day "on credit" from an individual named Monroe Miller, and not from the defendant.

**{¶15}** Defendant was subsequently acquitted of the trafficking and possession offenses set forth in Counts 9-12, but was convicted of failing to comply with the signal or order of a police officer as alleged in count 16, with the furthermore clause. The court determined that the defendant's car and $500 were subject to forfeiture, but his cell phone and additional money were not. On December 4, 2013, the trial court sentenced the defendant to 18 months of imprisonment.

**{¶16}** Defendant now appeals and assigns the following errors for our review:

Assignment of Error One

The court erred when it denied the motion to suppress.

Assignment of Error Two

There is insufficient evidence to support the verdict finding the appellant guilty of fleeing and eluding as charged in count [16] of the indictment.

Assignment of Error Three

The court erred when it refused to order the return of all the non-contraband property, not only because it was illegally seized, but also because it was the right thing to do.

Assignment of Error Four

The evidence finding the appellant guilty of violating Revised Code of Ohio, 2921.331(b), was insufficient to support a finding of guilt beyond a reasonable doubt.

Assignment of Error Five

The court erred when it summarily, and without the benefit of any findings of fact, denied the appellant's appeal bond.

{¶17} Having reviewed the record, and the controlling case law, we conclude that the assignments of error lack merit so we affirm.

Motion to Suppress

{¶18} In ruling upon motions to suppress, the trial court "assumes the role of the trier of fact, and as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1972). Accordingly, when we review suppression decisions,

> we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.

*Retherford* at 592-593.

{¶19} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, with some exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A warrantless arrest is unconstitutional unless the arresting officer has probable cause to make the arrest at that time. *State v. Timson*,

38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974). Probable cause exists when officers have

"'facts and circumstances within their knowledge and of which they [have] reasonably

trustworthy information' that would sufficiently 'warrant a prudent man in believing that

the [suspect] had committed or was committing an offense.'" *State v. Fannin*, 8th Dist.

Cuyahoga No. 79991, 2002-Ohio-6312, quoting *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223,

13 L.Ed.2d 142 (1964).

{¶20} The Fourth Amendment allows a police officer to stop and detain an

individual if the officer possesses a reasonable suspicion, based upon specific and

articulable facts, that criminal activity "may be afoot." *Terry*, 392 U.S. at 9, 88 S.Ct.

1868, 20 L.Ed.2d 889. In deciding whether reasonable suspicion exists, courts must

examine the "'totality of the circumstances' of each case to determine whether the

detaining officer has a 'particularized and objective basis' for suspecting legal

wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740

(2002), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66

L.Ed.2d 621 (1981); *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph

one of the syllabus, citing *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶21} Similarly, in *State v. Hale*, 8th Dist. Cuyahoga No. 92856, 2010-Ohio-3306,

this court held:

> In the instant case, Byard testified that a CRI ordered three pounds of
> marijuana from Gary, and it was to arrive at Gary's mobile home at 5:00
> p.m. Although Suzanne arrived at approximately the same time as Hale
> and Porter with a bag in her hand, Byard testified that, based on his
> experience, he ordered the takedown of Hale and Porter because Hale drove
>  up to Gary's mobile home and waited outside while Porter exited the

vehicle with a black garbage bag in his hand. The corner of the bag was consistent with the shape of three pounds of marijuana. Porter was in the mobile home for approximately four minutes before he exited with nothing in his hands. He and Hale drove away from the trailer park, while Suzanne stayed inside the mobile home.

* * *

We find that this testimony provides competent, credible evidence to support the trial court's finding that probable cause existed to stop Hale's vehicle and that defense counsel's argument that probable cause was defeated because Suzanne entered the mobile home at the same time with a bag in her hand is not persuasive. The totality of the circumstances gave Byard a particularized and objective basis for suspecting legal wrongdoing and justify police stopping the vehicle and arresting Hale.

**{¶22}** Similarly, in *State v. Tolbert*, 8th Dist. Cuyahoga No. 98310, 2013-Ohio-577, this court held:

[I]n the instant case, we find that competent and credible evidence to support the trial court's finding that probable cause existed to stop Tolbert's vehicle. The police used a CRI to complete three successful controlled buys within five days. The fourth controlled buy was a week after the first buy was completed. The controlled buys were arranged while Fairchild listened on speaker phone. The officers' surveillance revealed that Tolbert was present at the first buy and four days later on the third buy. On the fourth buy, Fairchild heard Williams state that he was at his father's house

and that he has to wait for "Z" to pick him up. The detectives then observed Tolbert pick up Williams and drive to the meet location. The totality of these circumstances gave Fairchild a particularized and objective basis for suspecting legal wrongdoing and gave the police probable cause to stop and search Tolbert's vehicle. Therefore, the trial court's denial of Tolbert's motion to suppress was proper.

{¶23} Applying that reasoning herein, we conclude that in this matter, the circumstances presented, including the pendency of the search warrant, the actions of the informant, McClain's conduct, and defendant's meeting with her, taken as a whole, created a reasonable suspicion that the defendant was engaged in illegal activity, and therefore, the officers' investigatory stop did not violate the Fourth Amendment.

{¶24} The first assignment of error is therefore without merit.

Sufficiency of the Evidence

{¶25} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 1997-Ohio-355, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id*. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113.

{¶26} R.C. 2921.331 provides in relevant part:

(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

* * *

(C)(5)(a)  A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

* * *

(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶27} For purposes of R.C. 2921.331(B), a police officer makes a visible or audible signal to stop by activating his flashing lights and sirens when following a vehicle. *State v. Garrard*, 170 Ohio App.3d 487, 2007-Ohio-1244,  867 N.E.2d 887, ¶ 29 (10th Dist.).  In *Garrard*, a violation of R.C. 2921.331(B) was established by proof that the defendant failed to stop his vehicle after a police officer who was following him activated his lights and sirens, and the defendant continued to speed through a commercial-residential area at a speed well in excess of the speed limit.  From that evidence, the court held that it could be inferred that the defendant intentionally failed to comply with the order or signal of the officer.  *Accord State v. Roberts*, 8th Dist. Cuyahoga No. 91086, 2008-Ohio-5750 (holding that where defendant drove 50 m.p.h. in

a 25 m.p.h. zone and drove through two stop signs and a red light, defendant's conviction for failure to comply was supported by sufficient evidence); *State v. Ferguson*, 10th Dist. Franklin No. 12AP-1003, 2013-Ohio-4798.

{¶28} In this matter, the state introduced evidence establishing that the defendant initially appeared to comply with Sergeant Roberts and Detective Davis when defendant's vehicle was stopped, but defendant then struck Detective Davis with the door of his car, put the car into gear, and sped off at speeds up to 55 miles per hour. The defendant continued to drive away while being pursued by other officers who had activated their lights and sirens. The defendant triggered a high-speed police chase that put numerous people at risk of harm. Viewing the evidence in a light most favorable to the prosecution, the jury could rationally have found that the state proved beyond a reasonable doubt the essential elements of failure to comply.

{¶29} The second assignment of error is without merit.

### Manifest Weight of the Evidence

{¶30} A challenge to the manifest weight of the evidence addresses not the mere existence of evidence on each element, but the effect of that evidence in inducing belief. *Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. To evaluate the manifest weight of the evidence, an appellate court reviews the entire record,

> "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*Id*. at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

*Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6 Ed.1990).

**{¶31}** Although the reviewing court is sometimes described as "the thirteenth juror" when conducting this review, the weight to be given the evidence and the credibility of the witnesses are still primarily for the trier of fact to determine. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶32}** Reviewing the evidence in this matter, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice in convicting defendant of the offense of failure to comply, with specification. The fourth assignment of error is without merit.

Return of Non-Contraband

**{¶33}** The forfeiture of property is governed by R.C. 2981.02, which provides:

Property subject to forfeiture; determination of use or intended use of instrumentality; motor vehicle law exclusion

(A) The following property is subject to forfeiture to the state or a political subdivision under either the criminal or delinquency process in section 2981.04 of the Revised Code or the civil process in section 2981.05 of the Revised Code:

(1) Contraband involved in an offense;

(2) Proceeds derived from or acquired through the commission of an offense;

(3) An instrumentality that is used in or intended to be used in the commission or facilitation of any of the following offenses when the use or intended use, consistent with division (B) of this section, is sufficient to warrant forfeiture under this chapter:

(a) A felony;

(b) A misdemeanor, when forfeiture is specifically authorized by a section of the Revised Code or by a municipal ordinance that creates the offense or sets forth its penalties;

(c) An attempt to commit, complicity in committing, or a conspiracy to commit an offense of the type described in divisions (A)(3)(a) and (b) of this section.

(B) In determining whether an alleged instrumentality was used in or was intended to be used in the commission or facilitation of an offense or an attempt, complicity, or conspiracy to commit an offense in a manner sufficient to warrant its forfeiture, the trier of fact shall consider the following factors the trier of fact determines are relevant:

(1) Whether the offense could not have been committed or attempted but for the presence of the instrumentality;

(2) Whether the primary purpose in using the instrumentality was to commit or attempt to commit the offense;

(3) The extent to which the instrumentality furthered the commission

of, or attempt to commit, the offense.

**{¶34}** "Contraband" is, inter alia, property used in the commission of an offense. R.C. 2901.01(A)(13). The state must prove by a preponderance of the evidence that the property is subject to forfeiture. R.C. 2981.04(B); R.C. 2981.02. On review, an appellate court may not reverse the trial court's decision based on a preponderance of the evidence standard where there is "some competent, credible evidence going to all the

essential elements of the case." *State v. Hall*, 8th Dist. Cuyahoga No. 92952, 2010-Ohio-1665, ¶ 22.

**{¶35}** In this matter, the trial court determined that the defendant's car and $500 were subject to forfeiture, but defendant's cell phone and his additional money were not. After thoroughly reviewing the record, we find that there is competent, credible evidence that the vehicle was used to commit the offense, and the $500 was the marked buy money previously given to the confidential informant. Moreover, the record sufficiently demonstrates that the offense could not have been committed but for the vehicle, and the vehicle furthered the offense. The vehicle therefore constitutes contraband under R.C. 2901.01(A)(13) and was properly subject to forfeiture under R.C. 2981.02.

**{¶36}** The third assignment of error is without merit.

### Denial of Appeal Bond

**{¶37}** Pursuant to App.R. 8, a court may have discretion to grant a criminal defendant bail during the pendency of the defendant's appeal. Given our total affirmance of defendant's conviction and sentence, this assignment of error is moot. *State v. Lehman*, 6th Dist. Sandusky No. S-00-044, 2001-Ohio-3096.

**{¶38}** The fifth assignment of error is therefore without merit.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KENNETH A. ROCCO, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR