[Cite as *State v. Cantrell*, 2021-Ohio-180.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 20AP-27 |
| | | (C.P.C. No. 18CR-3281) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| James W. Cantrell, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 26, 2021

**On brief**: [*G. Gary Tyack*] Prosecuting Attorney, *Barbara A. Farnbacher*, and *Sarah V. Edwards*, for appellee.

**On brief**: *Yeura Venters*, Public Defender, and *Ian J. Jones*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, James W. Cantrell, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following a jury trial in which he was found guilty of failure to comply with an order or signal of a police officer, with a penalty enhancing specification.

{¶ 2} On July 9, 2018, appellant was indicted on one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331. The indictment further alleged that appellant's operation of a motor vehicle caused a substantial risk of serious physical harm to persons or property.

{¶ 3}   The matter came for trial before a jury beginning October 15, 2019.  The first witness for the state was Obetz Police Officer Shaun Watson.  On June 23, 2018, at approximately 11:45 p.m., Officer Watson was in a marked police cruiser when he responded to a dispatch reporting an altercation between a male and female in the vicinity of Interstate 270 ("I-270"), between Alum Creek Drive and Groveport Road.  Officer Watson arrived near the interstate ramp of I-270 and Alum Creek Drive and spoke to a female, ("K.B."), who provided a description of a vehicle (a silver Cadillac) at a nearby McDonald's restaurant.

{¶ 4}   Officer Watson drove to the McDonald's, located at the intersection of Alum Creek Drive and Groveport Road; he pulled his cruiser into the parking lot and subsequently observed a silver Cadillac on the west side of McDonald's.  As Officer Watson was backing up his cruiser, "the Cadillac began to speed up rapidly." Officer Watson immediately turned on the cruiser's lights and siren "and proceeded to go after the individual." (Tr. Vol. I at 161.)  The officer drove "around the bend" of McDonald's "where the drive-thru is" located.  (Tr. Vol. I at 162.)

{¶ 5}   Officer Watson radioed that he had "an individual running from me."  The suspect vehicle exited McDonald's and turned onto Groveport Road; he was traveling "in the wrong direction" on Groveport Road, "and then he immediately [came] in the wrong direction in the Alum Creek lanes."  (Tr. Vol. I at 162.)  Officer Watson testified he "had to increase [his] speed drastically immediately" in order to pursue the vehicle.  The suspect vehicle made a left turn, heading "northbound in the southbound lanes of Alum Creek." (Tr. Vol. I at 164.)  The officer noted that Alum Creek Drive has "three lanes on the southbound lane and three lanes on the northbound lane."  (Tr. Vol. I at 163.)

{¶ 6}   The suspect vehicle then went "all the way from the left lane all the way to the right lane."  (Tr. Vol. I at 164.)  Officer Watson observed the car travel across "three lanes of traffic."  (Tr. Vol. I at 165.)  The vehicle then veered toward a concrete barrier and struck the barrier; as a result of the impact, one of the tires was "remove[d] * * * from the rim," and the vehicle "immediately [went] into a spinout."  (Tr. Vol. I at 165-66.)  Appellant's vehicle "almost" collided with an ambulance that had arrived on the scene to attend to the female who had reported the earlier altercation.  (Tr. Vol. I at 165.)  The spinout caused the

vehicle "to go through another intersection at 270 at Alum Creek and then spin[] off into the berm." (Tr. Vol. I at 166.)

{¶ 7}   Officer Watson exited his cruiser and arrested appellant. Upon handcuffing appellant and placing him in the back of the cruiser, Officer Watson noticed "the smell of alcohol." The officer also observed appellant had "some slow, slurred speech," and that "his eyes were red and glossy." (Tr. Vol. I at 178.)  At trial, Officer Watson identified appellant as the individual he arrested that evening.

{¶ 8}   The entire chase lasted between "13 to 16 seconds." (Tr. Vol. I at 167.)   The area of Alum Creek Drive where the chase ensued has a 45 m.p.h. speed limit. Officer Watson testified that, during the pursuit, he accelerated his cruiser to "60 miles per hour." (Tr. Vol. I at 180.)  Officer Watson believed the suspect vehicle "was going faster than that" at the time of the events. (Tr. Vol. I at 207.)  According to Officer Watson, appellant committed "eight or nine" infractions during the incident. (Tr. Vol. I at 179.)

{¶ 9}   Brad Worthington was called as a witness on behalf of plaintiff-appellee, State of Ohio. On the evening of June 23, 2018, at approximately 11:45 p.m., Worthington was driving northbound on Alum Creek Drive when he observed a male and a female in a vehicle in the southbound lane near the I-270 ramp. Worthington was concerned by what he witnessed and turned his vehicle around and then observed the male jump into a Cadillac and drive to a nearby McDonald's.

{¶ 10}  Worthington drove southbound on Alum Creek Drive to the McDonald's and called a dispatcher, providing the license plate number of the Cadillac. A short time later, a police cruiser pulled into the McDonald's and the Cadillac "takes off and they're on a chase." (Tr. Vol. II at 243.)  Worthington testified that the cruiser's "lights were on" when the Cadillac was still in the parking lot of McDonald's. (Tr. Vol. II at 244.)

{¶ 11}  When the vehicles exited the parking lot, "[t]hey headed * * * the wrong way," traveling in the "southbound lane headed north." Worthington then returned "to the initial point where everything happened," and he observed "the Cadillac was wrecked" and "at least six police cruisers" were at the scene. (Tr. Vol. II at 245.)

{¶ 12}  At the close of the state's case-in-chief, counsel for appellant made a Crim.R. 29 motion for judgment of acquittal. The trial court denied the motion.

{¶ 13} Appellant, age 25, testified on his own behalf.  Appellant stated he was not familiar with the traffic pattern at the intersection of Groveport Road and Alum Creek Drive on the date of the incident (June 23, 2018), and that the last time had he been at that intersection was in 2012.  According to appellant, he was unaware Groveport Road was now a divided highway or that it was illegal to make a left-hand turn out of McDonald's onto Groveport Road.

{¶ 14} On the evening of June 23, 2018, appellant was on Alum Creek Drive when he and his then girlfriend "had a disagreement and she got out of the vehicle."  Appellant "decided that if she wanted * * * to get out of the car, she could find her own way home; and I was going to head home, proceed home."  (Tr. Vol. II at 266-67.)  Appellant drove to a nearby McDonald's.  While sitting in the parking lot, appellant "tried to call [his] mother to ask her what [he] should do about the situation that previously happened."  (Tr. Vol. II at 266.)

{¶ 15} Appellant testified that he "backed out and went to go exit the McDonald's parking lot, and I turned left on Groveport Road.  And when I did that and I went to turn left back onto Alum Creek, I instantly became aware of the dividers and the median."  Appellant further stated: "I decided to pursue going the wrong way until I was -- what I was planning on doing was going to the intersection to get back on the right side of the road."  According to appellant, "once I turned left onto Alum Creek Drive, there was an ambulance coming directly towards me and two oncoming vehicles, and that's when I was aware of the cop lights behind me."  (Tr. Vol. II at 267.)

{¶ 16} Appellant had been drinking that evening and when he left the McDonald's he "was frustrated, distraught with the evening, upset."  (Tr. Vol. II at 268.)  Appellant testified he became aware of the police cruiser "[a]fter the yellow poles and the McDonald's and the dividers on the right side, when it's a solid median."  (Tr. Vol. II at 270.)  Appellant stated he did not hear any sirens from the police cruiser, but he saw "the police lights in my rearview mirror."  (Tr. Vol. II at 272.)  The vehicle struck the median, and "popped a tire." (Tr. Vol. II at 275.)  According to appellant, the vehicle was not disabled, and he could have continued driving.

{¶ 17} On cross-examination, appellant stated he "sped up" on Alum Creek Drive when he realized he was "on the wrong side of the road."  (Tr. Vol. II at 281.)  Appellant

testified he noticed the police cruiser behind him when he "was on Alum Creek Drive." (Tr. Vol. II at 284.) Appellant stated he was driving a "normal rate of speed" during the events. (Tr. Vol. II at 281.)

{¶ 18} At trial, the parties entered into the following stipulations: (1) "the defendant was convicted of operating a motor vehicle while intoxicated as a result of this incident"; (2) he was "also convicted of criminal mischief as a result of the incident between him and [K.B.] from [June 23, 2018], to which Officer Watson responded"; and (3) "the realignment of Groveport Road and the associated improvements on Alum Creek Drive were constructed in 2012 and 2013." (Tr. Vol. I at 149-50.)

{¶ 19} Following deliberations, the jury returned a verdict finding appellant guilty of failure to comply with an order or signal of a police officer, and the jury made the additional finding that appellant's operation of the motor vehicle caused a substantial risk of serious physical harm to persons and/or property. By judgment entry filed December 11, 2019, the trial court sentenced appellant to two years of community control and suspended his driver's license for a period of 36 months.

{¶ 20} On appeal, appellant sets forth the following two assignments of error for this court's review:

> [I.] Appellant's conviction for Failure to Comply with an Order or Signal of a Police Officer was against the manifest weight of the evidence.

> [II.] The evidence was legally insufficient to support Appellant's conviction for Failure to Comply with an Order or Signal of a Police Officer.

{¶ 21} Appellant's two assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges his convictions as not supported by sufficient evidence and as against the manifest weight of the evidence. With respect to his sufficiency argument, appellant contends the only reasonable conclusion for the jury to reach was that he did not intentionally fail to comply with an order or signal of the police officer. In arguing that his conviction was against the manifest weight of the evidence, appellant maintains the record is clear he did not act intentionally to flee or elude the officer.

{¶ 22} Under Ohio law, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations." *State v. M.L.D.*, 10th Dist. No. 15AP-614, 2016-Ohio-1238, ¶ 45. A Crim.R. 29 motion for judgment of acquittal "tests the sufficiency of the evidence, and, accordingly, we apply the same standard of review to Crim.R. 29 motions that we use in reviewing sufficiency of the evidence as a challenge to a guilty verdict." *Id.* at ¶ 44. In considering a sufficiency challenge, "we construe the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt." *Id.* at ¶ 45, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 23} By contrast, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at ¶ 8, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). A reviewing court "should reverse a conviction as against the manifest weight of the evidence in only the most 'exceptional case in which the evidence weighs heavily against conviction,' instances in which the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 24} R.C. 2921.331 defines the offense of failure to comply with an order or signal of a police officer, and R.C. 2921.331(B) states: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Under Ohio law, "[t]he term 'willfully' is synonymous with 'purposely' or 'intentionally.' " *State v. Scott*, 8th Dist. No. 99524, 2013-Ohio-4599, ¶ 16. In this respect, " '[p]urpose is defined in terms of a specific intention either to cause a certain result, or to engage in conduct of a certain nature regardless of what the offender intends to accomplish through that conduct.' " *State v. Cole*, 3d Dist. No. 13-10-30, 2011-Ohio-409, ¶ 22, quoting 1974 committee comments to R.C. 2901.22.

{¶ 25} R.C. 2921.331 "sets forth a range of violations of varying degrees for failure to comply with the order or signal of a police officer, spanning in severity from first-degree misdemeanors to third-degree felonies." *State v. McDonald*, 137 Ohio St.3d 517, 2013-

Ohio-5042, ¶ 4. As relevant to the instant case, the enhancement provision of R.C. 2921.331(C)(5)(a) states in part: "A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds * * * by proof beyond a reasonable doubt * * * (ii) [t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."

{¶ 26} Thus, the offense of failure to comply with an order or signal of a police officer "is elevated to a felony of the third degree if the State proves beyond a reasonable doubt that '[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.' " *State v. Brownlee*, 9th Dist. No. 27255, 2015-Ohio-2616, ¶ 28, quoting R.C. 2921.331(C)(5)(a)(ii).

{¶ 27} In accordance with R.C. 2901.01(A)(8), the term " '[s]ubstantial risk' " is defined to mean "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A) further provides in part as follows:

> (5) "Serious physical harm to persons" means any of the following:
>
> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
>
> (6) "Serious physical harm to property" means any physical harm to property that does either of the following:

(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

{¶ 28} Accordingly, in order to sustain a conviction under R.C. 2921.331, the state was required to prove that appellant "willfully fled or eluded a police officer while receiving a visible or audible signal to bring the vehicle to a stop." *State v. Odorizzi,* 7th Dist. No. 00 BA 21 (Dec. 19, 2001). Further, with respect to the penalty enhancement, the state was required to prove "that the operation of the motor vehicle caused a substantial risk of physical harm to persons or property." *Id.* A showing of "[a] strong possibility that harm could occur creates the mental culpability." *Id.*, citing *State v. Semenchuk,* 122 Ohio App.3d 30, 47 (8th Dist.1997).

{¶ 29} We initially consider appellant's challenge as to the sufficiency of the evidence. Construing the evidence most strongly in favor of the prosecution, as we are required to do in addressing a sufficiency challenge, the record indicates the following. On the evening of June 23, 2018, Officer Watson responded to the area of I-270, Alum Creek Drive and Groveport Road, following a report of an altercation involving a male and a female. When he arrived at the location, the officer was provided with the description of a Cadillac at a nearby McDonald's restaurant.

{¶ 30} Officer Watson drove to the McDonald's and pulled into the parking lot; he subsequently observed the suspect vehicle in the back corner of the parking lot, approximately 50 to 60 feet away. As Officer Watson put his cruiser in reverse and began backing up, the Cadillac "took off" and "began to speed up." (Tr. Vol. I at 161.) Officer Watson immediately activated the cruiser's lights and siren and began pursuit of the vehicle; the Cadillac was still in the McDonald's parking lot when Officer Watson employed the lights and siren. The suspect vehicle sped out of the McDonald's and immediately made a left turn, traveling the wrong direction on Groveport Road. The vehicle then made another left turn onto Alum Creek Drive, again traveling in the wrong direction (i.e., traveling northbound in the southbound lanes).

{¶ 31} Officer Watson, who had radioed that he had an individual "running from me," sped up in pursuit; he observed appellant driving north across three lanes of southbound Alum Creek Drive. (Tr. Vol. I at 162.) Appellant's vehicle then struck a concrete median barrier, causing one of the tires to pop off the rim and the vehicle to go into a "spinout." (Tr. Vol. I at 166.) The vehicle almost struck an ambulance that had been dispatched to the area following the earlier report of an altercation involving appellant and his then girlfriend. According to appellant's own testimony, in addition to the ambulance, he observed two other "oncoming vehicles" as he drove in the wrong direction on Alum Creek Drive. (Tr. Vol. II at 267.) As a result of the spinout, the vehicle traveled through "another intersection" at I-270 and Alum Creek Drive before coming to a stop on the berm of the roadway. (Tr. Vol. I at 166.) Officer Watson, who testified that the posted speed limit on Alum Creek Drive was 45 m.p.h., estimated that appellant was traveling "faster than" 60 m.p.h. during the incident. (Tr. Vol. I at 207.)

{¶ 32} Under Ohio law, "[a] trier of fact may infer from the evidence whether a defendant was aware of a police officer's signal to stop." *State v. Garrard*, 170 Ohio App.3d 487, 2007-Ohio-1244, ¶ 28 (10th Dist.), *abrogated in part on other grounds*, 124 Ohio St.3d 8. Here, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence upon which a reasonable trier of fact could have found beyond a reasonable doubt that appellant failed to comply with an order or signal of a police officer, and that he created a substantial risk of serious physical harm to persons or property while operating his vehicle. Accordingly, appellant's contention that his conviction was based on legally insufficient evidence is not persuasive.

{¶ 33} We next consider appellant's manifest weight argument. While appellant contends he did not intentionally flee from the officer, the jury heard conflicting testimony on this issue. At trial, the defense's theory of the case was that appellant was unaware the officer was in pursuit of him as he left the McDonald's. As noted, appellant also testified he was unfamiliar with the traffic patterns in the area and that he was confused during the events because he had been drinking and was upset.

{¶ 34} The state, however, presented testimony by the officer that he activated his cruiser lights while appellant was still in the McDonald's parking lot. Officer Watson further testified that, as he was backing up his cruiser in the parking lot, appellant's vehicle

"took off" and "began to speed up rapidly" in exiting the McDonald's. (Tr. Vol. I at 161.) Officer Watson's testimony was corroborated by that of Worthington, an individual who had reported the earlier altercation between appellant and his then girlfriend, and who had driven to McDonald's after observing appellant travel to that location in the Cadillac. Specifically, Worthington testified that he observed the cruiser pull into the McDonald's and that the cruiser's "lights were on" at the time appellant was still in the parking lot. Worthington also observed appellant's vehicle "speeding off" after the officer arrived. (Tr. Vol. II at 244.) The jury also heard conflicting testimony regarding the speed in which appellant was operating his vehicle after exiting McDonald's. While appellant testified he was driving a "normal rate of speed," the Officer Watson stated he believed appellant was traveling well over the posted speed limit during the pursuit. (Tr. Vol. II at 281.)

{¶ 35} While a reviewing court "is permitted to consider the credibility of the witnesses in ruling upon a manifest-weight-of-the-evidence argument," this "court's 'review must nevertheless be tempered by the principle that weight and credibility questions are primarily for the trier of fact.' " *State v. Hall*, 12th Dist. No. CA2005-08-217, 2006-Ohio-4206, ¶ 76, quoting *State v. Kash*, 12th Dist. No. CA2002-10-247, 2004-Ohio-415, ¶ 25, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Further, "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Strider-Williams,* 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 13, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21. In this respect, "[t]he trier of fact is free to believe or disbelieve all or any of the testimony" of a witness. *Id.*, citing *State v. Jackson*, 10th Dist. No. 01AP-973, 2002-Ohio-1257.

{¶ 36} In the present case, the trier of fact, in resolving conflicts, could have reasonably found that appellant willfully ignored the police officer's efforts to stop him. *See Garrard* at ¶ 41 (appellant's conviction not against manifest weight of evidence; reasonable inference that appellant acted willfully in failing to comply where, after officer activated cruiser lights, appellant did not stop but continued to speed up and prolong pursuit until later coming to stop on another street). On review, we cannot conclude the jury lost its way and created a manifest miscarriage of justice in convicting appellant, nor is

this "the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 37} Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____