[Cite as *State v. Brooks*, 2023-Ohio-2978.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

    Appellee

v.

Tammy Denise Brooks

    Appellant

Court of Appeals No.  L-22-1288
                   L-22-1289
                   L-22-1290

Trial Court No.  CRB-22-03738
                CRB-22-08183
                TRD-22-11929

**DECISION AND JUDGMENT**

Decided:  August 25, 2023

* * * * *

Rebecca Facey, City of Toledo Chief Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this consolidated appeal, following a bench trial, appellant, Tammy

Brooks, appeals the November 28, 2022 judgment of the Toledo Municipal Court,

convicting her of obstructing official business, failure to comply, maximum speed, and

willful or wanton operation. For the following reasons, we affirm, in part, and reverse, in part.

## I. Background and Facts

{¶ 2} Tammy Brooks was charged in three separate cases with obstructing official business, a violation of R.C. 2921.31(A) (Toledo Municipal Court case No. CRB-03738-0101); failure to comply with an order or signal of police, a violation of R.C. 2921.331(B) (Toledo Municipal Court case No. CRB-08183-0101); and maximum speed limit and willful or wanton operation, violations of R.C. 4511.20 and 4511.20(A), respectively (Toledo Municipal Court case Nos. TRD-22-11929-0102 and 0202). The cases were consolidated and tried to the bench on November 8, 2022. Metroparks Ranger Joseph Sauber testified for the state; Brooks testified in her own defense.

{¶ 3} According to Sauber, on April 26, 2022, he observed Brooks speed past him on Front Street; his radar clocked Brooks driving 95 miles per hour in a 35-mile-per-hour zone. Sauber activated his siren and lights and attempted to initiate a stop of Brooks's vehicle. Other vehicles driving between Brooks and Sauber pulled over in response to the siren and lights, but Brooks did not.

{¶ 4} Per department policy, rangers are not permitted to pursue vehicles for traffic violations due to safety concerns. Sauber, therefore, deactivated his siren and lights once he got within 1,000 feet of Brooks's vehicle, but continued to follow Brooks at a safe speed. He saw her pull into an apartment complex and exit her vehicle, and he

2.

followed. Sauber commanded Brooks to "stop" and "do not go inside." Brooks responded by telling Sauber that he had no reason to pull her over, then ran inside of the apartment.

{¶ 5} Sauber called for assistance from the Toledo Police Department. He and Toledo police officers searched for Brooks on the property, but they could not find her. After the officers left, Sauber spotted Brooks running down the street. He apprehended her and placed her in handcuffs. Toledo police officers returned to the scene and took Brooks into custody.

{¶ 6} Brooks denied traveling at 95 miles per hour. She claimed that her vehicle could not even go that fast because it had throttle problems. She denied hearing the siren or seeing the lights, and insisted that she was unaware that Sauber had been trying to get her attention. Sauber conceded on cross-examination that it is possible that Brooks was unaware that he was following her because he switched off his siren and lights.

{¶ 7} Brooks also denied that she and Sauber exchanged dialogue after she exited her vehicle. Brooks maintained that after she exited her vehicle, she walked to the apartment door, knocked, and waited to be let inside. After she entered the residence, she asked neighbors for cigarettes, then went for a walk. While on her walk, she was apprehended by Toledo police officers.

{¶ 8} After considering the testimony and evidence, the trial court found Brooks guilty of obstructing official business, maximum speed, and willful or wanton operation.

3.

It provided a lengthy explanation for its verdict. The trial court, however, continued the matter for a verdict on the failure-to-comply charge. The court believed that there was a split of authority regarding whether "events that occurred outside the motor vehicle" could provide a basis for a conviction, and gave the parties additional time to brief the issue.

{¶ 9} Neither party filed any supplemental materials, and the court rendered its verdict on November 28, 2022. It found Brooks guilty of failure to comply, again with a lengthy explanation for its verdict. It sentenced Brooks to costs only on the conviction of obstructing official business. It sentenced her to a 60-day suspended jail sentence, six months' inactive probation, and costs as to the failure to comply. Fines and costs were imposed on the traffic offenses.

{¶ 10} Brooks appealed. She raises two assignments of errors:

I. The trial court erred when it found the appellant guilty of obstruction because the appellant cannot have committed obstruction by doing nothing. This conviction is against the manifest weight of evidence.

II. The trial court erred when it convicted the defendant of failing to comply with the signal of an officer when the officer testified the defendant may not have seen him and no traffic stop was initiated. This conviction is against the manifest weight of the evidence.

4.

## II. Law and Analysis

{¶ 11} Brooks argues that her convictions of obstructing official business and failure to comply are against the manifest weight of evidence. In her first assignment of error, she claims that she cannot be guilty of obstruction of official business for "doing nothing." In her second assignment of error, Brooks claims that her conviction of failure to comply is against the manifest weight of the evidence because the evidence demonstrated that she was unaware that Sauber wanted her to stop, no traffic stop was actually initiated, and Sauber did not encounter Brooks until she exited her vehicle.

{¶ 12} When we review a claim that a verdict is against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the prosecution. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 387. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

5.

{¶ 13} Although we consider the credibility of witnesses under a manifest-weight standard, we must, nonetheless, extend special deference to the fact-finder's credibility determinations, given that it is the finder of fact that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. The finder of fact may believe or disbelieve all, part, or none of a witness's testimony. *State v. Caudill*, 6th Dist. Wood No. WD-07-009, 2008-Ohio-1557, ¶ 62, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

### A.    Obstructing Official Business

{¶ 14} In Brooks's first assignment of error, she argues that her conviction is against the manifest weight of the evidence because one cannot be convicted of obstructing official business for "doing nothing." Although Brooks frames her assignment of error as a challenge to the weight of the evidence, at its heart, her challenge is to its sufficiency because she is claiming that her conduct cannot, as a matter of law, constitute the offense of obstructing official business. But there is a fundamental flaw in Brooks's argument: the conduct she claims cannot support a conviction of obstructing official business is not the conduct upon which her conviction is based.

{¶ 15} "To support a conviction for obstructing official business, the state must prove that the accused engaged in an unprivileged affirmative act, that the act was done

6.

with a purpose or intent to hamper or impede the performance of a public official's duties, and that the act did, in fact, substantially hamper or impede the public official in the performance of his or her duties." (Citations omitted.) *State v. Williams*, 6th Dist. Lucas No. L-17-1071, 2017-Ohio-8344, ¶ 7.

{¶ 16} Brooks argues that she committed no affirmative act here because she did not see Sauber's lights and siren, Sauber turned off the sirens with approximately 1,000 feet between his vehicle and Brooks's, and Sauber conceded that it was possible that Brooks did not know she was being pursued. Brooks characterizes her conduct as "doing nothing."

{¶ 17} But as the state points out, Brooks's obstructing official business conviction was not based on her conduct in failing to pull over in response to Sauber's attempt to initiate the traffic stop—it was based on her conduct in running into the apartment when Sauber told her to "stop" and to "not go inside." ("It is that ongoing running, and then the later running as well, that additionally the City believes constitutes the Obstructing Official Business.")

{¶ 18} Typically when we review a claim that a verdict is against the manifest weight of the evidence, we do not know specifically why the trier of fact reached its verdict. But here, the trial court articulated in detail its rationale for convicting Brooks of this offense. The court explained that it "found the officer's testimony to be credible" and "the defendant's testimony not to be credible." In other words, the trial court

7.

believed that Brooks was operating her vehicle at a speed of 95 miles per hour, Sauber attempted to initiate a traffic stop, Sauber confronted Brooks after she parked and exited her vehicle, Sauber told Brooks to stop and not to go inside, Brooks told Sauber he had no reason to pull her over, then ran inside.

{¶ 19} Moreover, we also know from the court's explanation of its verdict (1) that the trial court believed that Brooks was "well aware that the police wanted to talk to her[,] [a]nd that she was under investigation," and (2) it was Brooks's running from Sauber after exiting her vehicle that formed the basis for the obstruction conviction. The court explained: "[C]learly the fact that she ran from her vehicle, forcing the officer to call in TPD and trying to look for her, within the residence, and only finding her after TPD left, that that obstructed his official business."

{¶ 20} In sum, we find that Brooks's conviction was premised on affirmative conduct—not on "doing nothing." And it was not based on her failure to pull over when Sauber attempted to initiate a traffic stop—it was premised on her running into the apartment after the officer told her to stop and not to go inside. And given that we must extend special deference to the trial court's credibility determinations, and the trial court explicitly determined that Sauber's version of events was credible, we find that the trial court did not clearly lose its way in resolving evidentiary conflicts in favor of the city and convicting Brooks of obstructing official business.

{¶ 21} We find Brooks's first assignment of error not well-taken.

8.

## B. Failure to Comply

{¶ 22} In Brooks's second assignment of error, she contends that her conviction of failure to comply is against the manifest weight of the evidence because R.C. 2921.331(B) is meant to criminalize behavior during a traffic stop, and there was no traffic stop here. Again, she emphasizes that she never saw Sauber's vehicle and Sauber admitted during cross-examination that it is possible that Brooks was unaware that he was following her and she may not have seen him.

{¶ 23} R.C. 2921.331(B) provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." The term "willfully" means that the person purposely sought to elude or flee a police officer after being ordered to stop. *State v. Garrard,* 170 Ohio App.3d 487, 2007-Ohio-1244, 867 N.E.2d 887 (10th Dist.), *abrogated in part on other grounds,* 124 Ohio St.3d, 918 N.E.2d 507 (2009) (finding "willfully" equivalent to "purposefully," as set forth in R.C. 2901.22). To "elude" means "to avoid adroitly or to evade." *Merriam-Webster.com/Dictionary/elude.* To "flee" means to "escape from danger, pursuit, or unpleasantness; to try to evade a problem." *Black Law Dictionary,* (11th Ed.2019). The act of continuing to drive, despite flashing lights and sirens, generally establishes the element of "willfully" for purposes of R.C. 2921.331(B). *State v. Nowak,* 6th Dist. Lucas No. L-21-1215, 2022-Ohio-2980, ¶ 16.

9.

{¶ 24} In order for one "willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop," he or she must have heard or seen such signals. "Under Ohio law, '[a] trier of fact may infer from the evidence whether a defendant was aware of a police officer's signal to stop.'" *State v. Cantrell*, 10th Dist. Franklin No. 20AP-27, 2021-Ohio-180, ¶ 32, quoting *Garrard* at ¶ 28.

{¶ 25} Here, again, we have insight into the trial court's rationale for its verdict because it articulated its findings. The court said that it had found "factually," "that the city failed to meet it[s] burden of proving, beyond a reasonable doubt that, while Ms. Brooks was driving her vehicle, that she was being followed." It reasoned that because she was driving at such a dangerous speed, the court "would think that [Brooks's] attention would be focused forwards, not whether or not she's being followed by the police." The court specifically found that Brooks did not fail to comply "while driving the vehicle." It reiterated that it "would not find that, while she was actually driving the vehicle, she Failed to Comply."

{¶ 26} Nevertheless, the trial court convicted Brooks of failure to comply because it found that she "was certainly aware that the officer was trying to get her attention, and that he needed to speak with her" yet "[s]he avoided that attention." In other words, the court concluded that the conduct that supported the obstructing official business

conviction—the conduct that occurred after she exited her vehicle—supported a conviction for failure to comply.

{¶ 27} Relating to the factual finding itself—i.e., that Brooks was not aware that Sauber was attempting to pull her over—this finding is difficult to reconcile with other factual findings the court made. Most notably, the court believed Sauber's testimony that upon confronting Brooks after she parked, Brooks told Sauber that he had no reason to pull her over, and she ran into the apartment. It determined that Sauber testified truthfully to the events and that Brooks's testimony was not "particularly credible." If Brooks, in fact, told Sauber that he "had no reason to pull her over," it would suggest to this court that Brooks must have known that Sauber had attempted to pull her over. Alas, the trial court served as fact-finder and it is our duty to extend special deference to the fact-finder's credibility determinations, so we will do so here.

{¶ 28} Brooks's assignment of error specifically challenges only the weight of the evidence, however, "a review of the weight of the evidence necessarily involves an evaluation of the sufficiency of the evidence in that, in order for this Court to weigh the evidence, there must be evidence to weigh." *State v. Frum*, 9th Dist. Wayne No. 12CA0039, 2013-Ohio-1096, ¶ 4. Nothing prevents an appellate court from sua sponte reviewing the sufficiency of the evidence "when it is obvious on the face of the record that the conviction is based upon insufficient evidence." *Id.* "To uphold such a conviction would violate a defendant's due process rights. *Id.,* citing *Thompkins,* 78

11.

Ohio St.3d at 386, 678 N.E.2d 541 ("[A] conviction based on legally insufficient evidence constitutes a denial of due process.").[1]

{¶ 29} Whether there is sufficient evidence to support a conviction is a question of law. *Thompkins* at 386. In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

{¶ 30} The Ohio Supreme Court has recognized that "R.C. 2921.331(A) and (B) describe separate violations; R.C. 2921.331(A) prohibits the failure to comply with any lawful order of a police officer, whereas R.C. 2921.331(B) prohibits willfully fleeing or eluding a police officer after receiving a signal to stop." *State v. McDonald*, 137 Ohio

---

[1] In any event, Brooks framed her assignment of error as a challenge to the weight of the evidence, but within that assignment, she also argued that the state did not meet its burden to prove that her encounter with Sauber did not arise from a stop of her motor vehicle.

12.

St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, ¶ 5. "R.C. 2921.331(A) can apply to an offender who is not even in an automobile and who simply ignores an officer's traffic signal. R.C. 2921.331(B), on the other hand, requires the operation of a motor vehicle and the willful eluding or fleeing from a police officer after receiving a visible or audible signal to stop, a purposeful flouting of a police officer's signal and an attempt to escape." *Id.* at ¶ 21.

{¶ 31} Here, Brooks was charged with violating R.C. 2921.331(B). Accordingly, once the trial court determined that Brooks did not fail to comply "while driving the vehicle," it should have acquitted her of that charge. This is because Brooks's conduct outside the vehicle—i.e., running into the apartment after Sauber told her to stop—cannot support a conviction under R.C. 2921.331(B). In other words, the trial court's factual finding rendered the evidence insufficient.

{¶ 32} Because the evidence was insufficient to support Brooks's conviction under R.C. 2921.331(B), we reverse. And because we are reversing on grounds of insufficiency, rather than on grounds of manifest weight, the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and Section 10, Article I of the Ohio Constitution, prohibits the city from retrying Brooks. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 47, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (explaining that "the Double Jeopardy Clause does not preclude retrial of a defendant if the reversal was grounded upon a finding that the conviction was

13.

against the weight of the evidence," "[h]owever, retrial is barred if the reversal was based upon a finding that the evidence was legally insufficient to support the conviction"). Accordingly, we vacate Brooks's conviction for failure to comply.

{¶ 33} We find Brooks's second assignment of error well-taken.

### III.    Conclusion

{¶ 34} Brooks's conviction of obstructing official business was based on affirmative conduct, and the trial court's factual findings were not against the manifest weight of the evidence.  We find Brooks's first assignment of error not well-taken.

{¶ 35} Given the trial court's factual finding that Brooks was unaware that Sauber had given her a visible or audible signal to stop her vehicle, it could not properly convict her under R.C. 2921.331(B), which requires the operation of a motor vehicle and the willful eluding or fleeing from a police officer after receiving a visible or audible signal to stop.  We find Brooks's second assignment of error well-taken.

{¶ 36} We affirm the November 28, 2022 judgment of the Toledo Municipal Court as to Brooks's conviction of obstructing official business, but we reverse and vacate her conviction for failure to comply.  Brooks and the city are ordered to share in the costs of this appeal under App. R. 24.

Judgment affirmed, in part,
and reversed, in part.

14.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                     _____
                                                            JUDGE

Christine E. Mayle, J.

                                          _____
Gene A. Zmuda, J.                                           JUDGE
CONCUR.

                                          _____
                                                            JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.